[L.A. No. 29692. In Bank. Feb. 18, 1970.]

LUCILE ACOSTA, Plaintiff and Respondent, v.
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT,
Defendant and Appellant.

**COUNSEL**

Victor Rosenblatt and Harry M. Hunt for Defendant and Appellant.

Charles A. Harrison for Plaintiff and Respondent.

**OPINION**

**TOBRINER, Acting C. J.**—Defendant appeals from a judgment of the Los Angeles Superior Court entered on a verdict in favor of plaintiff Lucile

Acosta for general and special damages in the amount of $12,500. Plaintiff sustained injuries in a fall which occurred when the bus on which she was riding stopped suddenly.

We have concluded that the judgment should be affirmed in that the trial court properly refused to exclude evidence of plaintiff's medical expenses. In addition, the court properly refused to permit defendant, without a proper foundation, to inquire before the jury as to whether a portion of plaintiff's medical bills had been paid through her insurance. We also hold that the record contains substantial evidence to support the judgment.

### 1. *The facts.*

Plaintiff was employed as a saleswoman in the children's shoe department of Bullock's downtown Los Angeles store. On September 17, 1966, the last Saturday for shopping before the beginning of the school year, she left work about 6:15 p.m. and waited for a Southern California Rapid Transit District bus at the corner of Eighth and Broadway in the Los Angeles central business district. The bus stopped at the corner just behind a late-model Ford sedan which had stopped for the traffic signal. Plaintiff waited for about eight or nine other passengers to board the bus and then she did so and paid the fare.

As plaintiff began to walk back toward the rear of the half-filled vehicle to find a seat, the signal light changed and the bus started, following 40 feet behind the Ford sedan northward on Broadway in moderate rush-hour traffic. The bus driver knew that the next block of Broadway contained a mid-block crosswalk for pedestrians, but as he approached to within 100 feet of the walk he saw no pedestrians crossing. He did, however, see several young boys of ages 10 to 12 running northward along the sidewalk approaching the center of the block. Fearing some difficulty, the driver took his foot off the accelerator and rested it on the brake without braking, permitting the bus to coast at about 15 to 20 miles per hour. As the boys reached the center of the block, they turned into the crosswalk and crossed directly in front of the Ford sedan which, to avoid hitting the boys, braked abruptly. The bus driver immediately applied his brakes and brought the bus to a halt some five feet behind the Ford sedan.

While the bus was traveling the approximately 200 feet from the corner bus stop to the sudden halt to avoid a collision, the passengers were moving toward the back of the bus to find seats. Plaintiff, the last passenger to board the bus, had just reached the first set of seats which face the front of the bus when the driver applied the brakes. There is a conflict in the evidence as to whether she was holding onto a bar at the time, but when the

bus stopped suddenly plaintiff and at least two other ladies were thrown forward in the bus and fell over the coin box and onto the floor, with plaintiff on the bottom of the heap.

An ambulance carried plaintiff to the Central Receiving Hospital where she received first aid. At the suggestion of her family physician, Dr. Elerding, plaintiff was transferred to the California Hospital for treatment of a lacerated left elbow, a severe contusion of the left hip, recurrent severe headaches, and considerable difficulty in walking. She remained hospitalized for about seven weeks and returned to work for the first time in January 1967. She thereafter worked regularly but not full time, and by the time of trial on February 29, 1968, she had been working only five or six hours a day, five days a week, as a consequence of her injuries.

Plaintiff brought a tort action against the Southern California Rapid Transit District, a public entity, but not the driver of the bus. In chambers, immediately prior to trial, defendant moved to exclude from evidence all medical bills incurred by plaintiff on the basis of her admissions to interrogatories that such bills were largely paid by Blue Shield (California Physicians Service), a collateral source. The defendant predicated its motion on *City of Salinas* v. *Souza & McCue Constr. Co.* (1967) 66 Cal.2d 217 [57 Cal.Rptr. 337, 424 P.2d 921]; plaintiff sought to distinguish *Souza* on the ground that it involved double recovery, whereas in the present case Blue Shield must be reimbursed from any recovery by the plaintiff. The trial court observed that the collateral source language of *Souza* constituted little more than dicta and reasoned that this court had probably not considered a case in which the plaintiff, over an extended period, had expended considerable funds in paying insurance premiums. The trial court concluded that at least if premiums exceeded the amount to be recovered in a tort action, the defendant could not exclude evidence of the hospital and medical services. The court denied the motion to exclude the evidence.

Later in the trial defendant apparently reserved its objection to the admission into evidence of the medical bills, but stipulated to the introduction of these bills into evidence. In order to show that plaintiff was a malingerer or that the medical services that she received were not reasonable and necessary, defendant sought to cross-examine her on payments and services provided by Blue Shield, Metropolitan Insurance, and California State Disability Insurance. Defendant's attorney indicated that his pretrial motion included a request for cross-examination as to all these forms of insurance coverage,[1] but defendant's counsel did not reiterate

---

[1]Defendant's counsel erroneously believed that his pretrial motion included a request for cross-examination of plaintiff as to the nature and extent of her insurance

his reliance on the *Souza* case. The trial court was disposed to permit defendant's attorney to inquire about any possible insurance coverage outside the hearing of the jury to lay a basis for appeal and then also to permit some questioning on the insurance coverage to show that plaintiff might have been a malingerer. But, apparently, defense counsel did not accept this opportunity to inquire, outside the hearing of the jury, about insurance coverage, and the court reasserted its denial of the pretrial motion. Defense counsel proceeded to question plaintiff without mention of the medical insurance coverage.

Later in the trial the court reasserted its refusal to permit defendant to show, under the *Souza* case, that plaintiff's medical bills had been paid, but again stated that the defense would be permitted to attempt to prove plaintiff a malingerer. Defense counsel admitted that he knew that plaintiff might possess Blue Shield, Metropolitan Insurance, and California State Disability Insurance coverage, but he did not submit any offer of proof as to whether she was receiving more in benefits than she had paid in premiums. Although the trial court required an offer of proof before any of the insurance information could be presented to the jury, defense counsel, accepting this ruling, neither tendered an offer of proof nor requested an opportunity to inquire about the insurance coverage outside the hearing of the jury so that he could make such an offer. The record contains no information as to the nature or extent of plaintiff's insurance coverage except the offer of proof that most of her medical bills had been paid by Blue Shield.[2]

Plaintiff presented evidence of a little over $7,500 in special damages, including a $3,427 bill from the California Hospital, a $1,025 doctor's bill from the Moore-White Medical Clinic, and a $32 ambulance bill, for a total of $4,484 in medical specials.[3] After the jury verdict in favor of plaintiff in the sum of $12,500, the defendant appealed, raising only three contentions: (1) The trial court committed prejudicial error in refus-

coverage. The record indicates that the judge and the two attorneys may have had several off-the-record discussions of the problem and the defense counsel probably forgot which discussions had been reported in the record and which had not.

[2] In plaintiff's brief in the Court of Appeal it is asserted: "Counsel for appellant was advised of the true facts of respondent's medical bill situation, i.e., that she had benefits under a Blue Shield (California Physicians Service) contract. . . . Such a contract has been approved by this court in *Block vs. California Physicians Service* [1966] 244 Cal.App.2d 266 [53 Cal.Rptr. 51] [no petition for hearing]. Under the *Block* case the patient was held required to reimburse Blue Shield from any recovery for the bills paid by it. This should set at rest any fears of appellant that respondent might make a double recovery."

[3] Plaintiff claimed special damages of about $7,500 of which $4,484 represented medical bills, $2,800 lost earnings, and about $250 babysitting expenses incurred as a result of the accident.

ing to permit evidence showing that a portion of the plaintiff's medical bills had been paid by a collateral source; (2) the trial court's refusal to allow the defense to inquire if plaintiff had received compensation from more than one collateral source for medical expenses resulted in prejudicial error; and (3) the record lacked substantial evidence to support a judgment against defendant on the issue of negligence.

### 2. *The collateral source rule and public entities.*

We must initially note that plaintiff strenuously argues that we need not consider whether the collateral source rule applies to public entities under *Souza* because the defendant's counsel purportedly waived his objection to the admission of the medical bills and stipulated to their admission subject only to a later showing as to reasonableness and necessity. Defendant tendered a pretrial motion on the basis of the *Souza* case to prevent the submission of the medical bills for which plaintiff had been recompensed by her Blue Shield coverage; the trial court denied the motion. Later the defense did stipulate to the admission of the medical bills. It is somewhat unclear whether the defendant's attorney reserved his pretrial objection, but upon a review of the record we must conclude that he did not waive his objection; the substantive issue of the collateral source rule is properly before us.

In any case, we determined the issue of the application of the collateral source rule to public entities in *Helfend* v. *Southern Cal. Rapid Transit Dist., ante,* p. 1 [84 Cal.Rptr. 173, 465 P.2d 61]. We concluded in *Helfend* that the collateral source rule is not simply a punitive measure but can legitimately claim several compensatory functions in the present American law of torts and damages and that the rule applies to public entity defendants in tort cases, in which the plaintiff possesses medical insurance.

The only possible distinction between the present case and *Helfend* is that, although plaintiff in *Helfend* sued both the Southern California Rapid Transit District and the bus driver, the plaintiff here sued only the Southern California Rapid Transit District. In view of our conclusion in *Helfend,* this contention urges a distinction without a difference. Only if we were to have decided in *Helfend* that the collateral source rule could not apply to public entities would it be necessary for us to determine whether some distinction should be drawn between the *Helfend* and *Acosta* cases. (See *Helfend* v. *Southern Cal. Rapid Transit Dist., ante,* pp. 14-16 [84 Cal.Rptr. 173, 465 P.2d 61].) ■ We conclude that the trial court properly followed the collateral source rule and correctly refused to permit defendant public entity to mitigate damages by showing that plaintiff in this

tort case[4] had received compensation for some of her injuries from a source entirely independent of the tortfeasor.

3. *In the absence of a sufficient foundation to show that the information bears a proper relationship to the issues in the case, the trial court correctly refused to permit the defendant to inquire within the hearing of the jury as to whether plaintiff had been compensated by a collateral source.*

Defendant sought on two separate bases to inquire before the jury as to whether plaintiff had been compensated by a collateral source. As we have discussed above, the trial court properly refused to permit defendant an opportunity to mitigate damages on the basis of the purported import of the *Souza* case.

█ Defendant also requested leave to inquire about collateral source payments on the issue of the reasonableness and necessity of the medical treatment costs. The trial court indicated that it would permit defendant to lay a proper foundation outside the hearing of the jury for such an inquiry before the jury. The trial court did not refuse to consider any evidence on the issue of malingering (cf. *Beneficial Fire & Cas. Ins. Co.* v. *Kurt Hitke & Co.* (1956) 46 Cal.2d 517, 522 [297 P.2d 428]; *Caminetti* v. *Pacific Mut. Life Ins. Co.* (1943) 23 Cal.2d 94, 100 [142 P.2d 741]), but simply requested defense counsel to develop facts outside the hearing of the jury so that the judge could assess the prejudicial effect of informing the jury about plaintiff's insurance coverage. (See Evid. Code, §§ 352, 1155; *People* v. *Mosher* (1969) 1 Cal.3d 379, 399-400 [82 Cal.Rptr. 379, 461 P.2d 659]; *MacDonnell* v. *California Lands Inc.* (1940) 15 Cal.2d 344, 346-349 [101 P.2d 479]; Witkin, Cal. Evidence (2d ed. 1966) §§ 1310-1311, at pp. 1211-1212.)

Defense counsel did not accept this opportunity. As a consequence, the court denied defendant's request for an inquiry within the hearing of the jury: the trial court believed that it could not properly assess the prejudicial effect of an allusion to the insurance coverage before the jury, even with the appropriate cautionary instructions, against the probability that defendant could show that plaintiff might be a malingerer. (See *Helfend* v. *Southern Cal. Rapid Transit Dist., ante,* pp. 16-18 [84 Cal.Rptr.

---

[4]Although plaintiff might have sued the common carrier either in tort (e.g., *McBride* v. *Atchison, Topeka & S.F. Ry. Co.* (1955) 44 Cal.2d 113 [279 P.2d 966]) or in contract (e.g., *Sheldon* v. *Steamship Uncle Sam* (1861) 18 Cal. 526), she elected to pursue her remedies against defendant in tort. Hence, this case does not involve the application of the collateral source rule to an action in contract. (See generally, Prosser, Law of Torts (3d ed. 1964) pp. 634-643; 2 Witkin, Cal. Procedure (1954) Pleading, §§ 185-186, at pp. 1163-1164.)

173, 465 P.2d 61]; *Hoffman* v. *Brandt* (1966) 65 Cal.2d 549, 554-555 [55 Cal.Rptr. 417, 421 P.2d 425]; *Garfield* v. *Russell* (1967) 251 Cal.App.2d 275, 278-279 [59 Cal.Rptr. 379].) Under such circumstances we certainly cannot say that the trial court abused its discretion under Evidence Code section 352. (See Witkin, Cal. Evidence, *supra,* §§ 374, 633-634, at pp. 332-333, 595-598; cf. *Eichel* v. *New York Central R.R. Co.* (1963) 375 U.S. 253, 255-256 [11 L.Ed.2d 307, 309, 84 S.Ct. 316].)

### 4. *The record contains substantial evidence to support the judgment.*

Defendant contends that the record lacks substantial evidence to support the judgment following the jury's verdict in favor of plaintiff. ■ In reviewing the evidence to support a trial court finding we, of course, only determine whether any substantial evidence, contradicted or not contradicted, will support the jury's conclusion of negligence. (See *Brinkmann* v. *Liberty Mut. Fire Ins. Co.* (1965) 63 Cal.2d 41, 44 [45 Cal.Rptr. 8, 403 P.2d 136]; *Chance* v. *Lawry's, Inc.* (1962) 58 Cal.2d 368, 384 [24 Cal. Rptr. 209, 374 P.2d 185]; *Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; see also 3 Witkin, Cal. Procedure (1954), Appeal, § 84, at pp. 2245-2246.)

In the present case we must analyze the record to determine whether it presents substantial evidence to support a judgment of negligence against the common carrier defendant. ■ Common carriers bind themselves to carry safely those whom they take into their vehicles, and owe both a duty of utmost care and the vigilance of a very cautious person towards their passengers. ■ Such carriers are responsible for any, even the slightest, negligence and are required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances. (See Civ. Code, § 2100; *Rogers* v. *Los Angeles Transit Lines* (1955) 45 Cal.2d 414, 417 [289 P.2d 226]; *McBride* v. *Atchison, Topeka & S.F. Ry. Co., supra,* 44 Cal.2d 113, 116; *Rystinki* v. *Central Cal. Traction Co.* (1917) 175 Cal. 336, 343 [165 P. 952]; but cf. Note (1952) 4 Hastings L.J. 72.) ■ As we observed in *Dempsey* v. *Market Street Ry. Co.* (1943) 23 Cal.2d 110, 112 [142 P.2d 929], "While it is true that a certain amount of lurching and jerking is inevitable in the lawful operation of a streetcar [, bus, or other common carrier] [citations], a passenger is not required, as a matter of law, to anticipate a 'sudden' or 'violent' jerk that has sufficient force to throw her to the floor. [Citations.]"

■ In view of the common carrier's utmost duty of care towards its passengers the record in this case clearly supports the jury verdict for the plaintiff. Plaintiff entered defendant's bus as a paying passenger during the rush hour in the center of the Los Angeles business district. The bus began to move before plaintiff had an opportunity to reach a seat, and traveled

only 200 feet to the point of the accident. Although the bus driver knew that the next block contained a mid-block pedestrian crosswalk and observed a group of boys running in the direction of the crosswalk, he drove at a speed of 15 to 20 miles per hour, and so close to the preceding car that when the boys attempted to cross the street at the walk he was compelled to bring his bus to such a sudden stop that plaintiff, among others, was thrown to the floor and injured. From these facts the jury could reasonably conclude that the bus driver had not acted with the utmost care in driving defendant's bus and that plaintiff should recover for her injuries.

The judgment is affirmed.

McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.