24 F.3d 39
 62 USLW 2705
 Billie Jean ANDREWS, Plaintiff-Appellant,
v.
UNITED AIRLINES, INC., a corporation; Does 1 through 50,
inclusive, Defendant-Appellee.
 No. 92-16663.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1994.
Decided May 13, 1994.
 
 Andrew Zabronsky, Susie Injijian, Deborah M. Heller, Sterns, Walker & Lods, San Francisco, CA, for plaintiff-appellant.
 Philip R. Diamond, James C. Nielson, Peter M. Hart, Wright, Robinson, McCammon, Osthimer & Tatum, San Francisco, CA, for defendant-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before: FLETCHER, KOZINSKI and TROTT, Circuit Judges.
 Opinion by Judge KOZINSKI.
 KOZINSKI, Circuit Judge.
 
 
 1
 We are called upon to determine whether United Airlines took adequate measures to deal with that elementary notion of physics--what goes up, must come down. For, while the skies are friendly enough, the ground can be a mighty dangerous place when heavy objects tumble from overhead compartments.
 
 
 2
 * During the mad scramble that usually follows hard upon an airplane's arrival at the gate, a briefcase fell from an overhead compartment and seriously injured plaintiff Billie Jean Andrews. No one knows who opened the compartment or what caused the briefcase to fall, and Andrews doesn't claim that airline personnel were involved in stowing the object or opening the bin. Her claim, rather, is that the injury was foreseeable and the airline didn't prevent it.
 
 
 3
 The district court dismissed the suit on summary judgment, and we review de novo. Dorsey v. National Enquirer, Inc., 973 F.2d 1431, 1434 (9th Cir.1992). This is a diversity action brought in California, whose tort law applies. Id.
 
 II
 
 4
 The parties agree that United Airlines is a common carrier and as such "owe[s] both a duty of utmost care and the vigilance of a very cautious person towards [its] passengers." Acosta v. Southern Cal. Rapid Transit Dist., 2 Cal.3d 19, 27, 84 Cal.Rptr. 184, 465 P.2d 72 (1970); see Cal. Civil Code Sec. 2100 (West 1985); United Air Lines, Inc. v. Wiener, 335 F.2d 379, 402 (9th Cir.1964). Though United is "responsible for any, even the slightest, negligence and [is] required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances," Acosta, 2 Cal.3d at 27, 84 Cal.Rptr. 184, 465 P.2d 72, it is not an insurer of its passengers' safety, Lopez v. Southern Cal. Rapid Transit Dist., 40 Cal.3d 780, 785, 221 Cal.Rptr. 840, 710 P.2d 907 (1985). "[T]he degree of care and diligence which [it] must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of [its] business...." Id.
 
 
 5
 To show that United did not satisfy its duty of care toward its passengers, Ms. Andrews presented the testimony of two witnesses. The first was Janice Northcott, United's Manager of Inflight Safety, who disclosed that in 1987 the airline had received 135 reports of items falling from overhead bins. As a result of these incidents, Ms. Northcott testified, United decided to add a warning to its arrival announcements, to wit, that items stored overhead might have shifted during flight and passengers should use caution in opening the bins. ER 10. This announcement later became the industry standard. ER 81.
 
 
 6
 Ms. Andrews's second witness was safety and human factors expert Dr. David Thompson, who testified that United's announcement was ineffective because passengers opening overhead bins couldn't see objects poised to fall until the bins were opened, by which time it was too late. Dr. Thompson also testified that United could have taken additional steps to prevent the hazard, such as retrofitting its overhead bins with baggage nets, as some airlines had already done, ER 53,[1] or by requiring passengers to store only lightweight items overhead, ER 54.[2]
 
 
 7
 United argues that Andrews presented too little proof to satisfy her burden under Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). One hundred thirty-five reported incidents, United points out, are trivial when spread over the millions of passengers travelling on its 175,000 flights every year. ER 11. Even that number overstates the problem, according to United, because it includes events where passengers merely observed items falling from overhead bins but no one was struck or injured. ER 80.[3] Indeed, United sees the low incidence of injuries as incontrovertible proof that the safety measures suggested by plaintiff's expert would not merit the additional cost and inconvenience to airline passengers.
 
 III
 
 8
 It is a close question, but we conclude that plaintiff has made a sufficient case to overcome summary judgment. United is hard-pressed to dispute that its passengers are subject to a hazard from objects falling out of overhead bins, considering the warning its flight crews give hundreds of times each day. The case then turns on whether the hazard is serious enough to warrant more than a warning. Given the heightened duty of a common carrier, Acosta, 2 Cal.3d at 27, 84 Cal.Rptr. 184, 465 P.2d 72, even a small risk of serious injury to passengers may form the basis of liability if that risk could be eliminated "consistent with the character and mode of [airline travel] and the practical operation of [that] business...." Lopez, 40 Cal.3d at 785, 221 Cal.Rptr. 840, 710 P.2d 907. United has demonstrated neither that retrofitting overhead bins with netting (or other means) would be prohibitively expensive, nor that such steps would grossly interfere with the convenience of its passengers. Thus, a jury could find United has failed to do "all that human care, vigilance, and foresight reasonably can do under all the circumstances." Acosta, 2 Cal.3d at 27, 84 Cal.Rptr. 184, 465 P.2d 72.
 
 
 9
 The reality, with which airline passengers are only too familiar, is that airline travel has changed significantly in recent years. As harried travelers try to avoid the agonizing ritual of checked baggage, they hand-carry more and larger items--computers, musical instruments, an occasional deceased relative. See Jo Beth McDaniel, Final Call for Carry-On Cargo, Travel Weekly, Feb. 28, 1988, at 22; Valarie Basheda, Airline Sued Over Fallen Luggage Cart, Gannett News Serv., Dec. 3, 1992. The airlines have coped with this trend, but perhaps not well enough. Given its awareness of the hazard, United may not have done everything technology permits and prudence dictates to eliminate it. See Treadwell v. Whittier, 80 Cal. 574, 600, 22 P. 266 (1889) ("common carriers ... must keep pace with science, art, and modern improvement"); Valente v. Sierra Ry., 151 Cal. 534, 543, 91 P. 481 (1907) (common carriers must use the best precautions in practical use "known to any company exercising the utmost care and diligence in keeping abreast with modern improvement in ... such precautions").
 
 
 10
 Jurors, many of whom will have been airline passengers, will be well equipped to decide whether United had a duty to do more than warn passengers about the possibility of falling baggage. A reasonable jury might conclude United should have done more; it might also find that United did enough. Either decision would be rational on the record presented to the district court which, of course, means summary judgment was not appropriate.
 
 
 11
 REVERSED AND REMANDED.
 
 
 
 [1]
 Dr. Thompson testified British Airways began using restraining netting in 1989. ER 53. Apparently at least one other airline, Virgin Atlantic, has followed suit. See Kevin Rafferty, Tricky Thoughts Aloft, Financial Times, May 2, 1992 (Travel), at XI
 
 
 [2]
 He recognized that this was not a very practical solution from either the airlines' or the passengers' point of view
 
 
 [3]
 Curiously, neither side introduced these reports into the record. This proved fatal to Andrews's claim below, as the district court, relying on Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1105 (9th Cir.1991), premised its dismissal on plaintiff's failure to present evidence that any of the 135 incidents bore "some rational relationship" to her own, so as to show United was on notice of a hazard. ER 124. While the district court may have been correct were notice in doubt, here United recognized the hazard as early as 1987. See p. 40-41 supra. The question is whether it did enough to address it