[L.A. No. 31917. Dec. 31, 1985.]

CARMEN LOPEZ et al., Plaintiffs and Appellants, v.
SOUTHERN CALIFORNIA RAPID TRANSIT DISTRICT,
Defendant and Respondent.

**COUNSEL**

Mohi & Glasman and Steven L. Mazza for Plaintiffs and Appellants.

Mavridis, Conway & Sheehan, Michael Booser and Marc J. Poster for Defendant and Respondent.

**OPINION**

**GRODIN, J.**—The issue presented in this case is whether the Southern California Rapid Transit District (RTD), a public corporation, has a duty to protect passengers aboard its buses from assaults by fellow passengers. We conclude that RTD does owe such a duty to its passengers and that RTD is not immune from liability under the facts alleged in plaintiffs' complaint.

We therefore hold that the trial court erred in sustaining RTD's demurrer, and reverse the judgment of dismissal.

## I.

Plaintiffs Carmen and Carla Lopez, Yolanda and Jose de Dios and Zenaida Arce brought this action against RTD for injuries they received when a fight broke out among passengers on board an RTD bus. Plaintiffs' first amended complaint alleges the following facts which, for purposes of this appeal, are deemed admitted. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

RTD is a public corporation engaged as a common carrier in the business of transporting members of the general public. While plaintiffs were on board an RTD bus as fare-paying passengers, a group of juveniles began harassing other passengers and a "violent argument" ensued. The bus driver was notified of the "altercation" but "failed to take any precautionary measures, and continued to operate the said bus." The argument eventually escalated into a "violent physical fight" and plaintiffs were injured.

Plaintiffs allege that RTD "so negligently operated, owned, maintained, supervised, entrusted, inspected, controlled and drove the bus so as to allow the passengers involved in the violent argument to engage in a violent physical fight," and that plaintiffs were injured as a direct and proximate result of RTD's negligence. Plaintiffs further allege that there was a history of violent and assaultive conduct by passengers on this particular bus route, that violent incidents occurred daily or weekly, and that RTD was fully aware of this history of violence and the risk posed to passengers riding its buses.[1]

RTD demurred to plaintiffs' first amended complaint, alleging that the complaint failed to state facts sufficient to constitute a cause of action and was fatally uncertain. In its points and authorities accompanying the demurrer, RTD argued that it had no duty to protect passengers from assaults by fellow passengers and that it was immune from liability under Government Code sections 845, 820.2 and 815.2, subdivision (b). The trial court sustained RTD's demurrer without leave to amend and entered an order of dismissal on the grounds that "RTD, a public entity, is immune from liability under the facts of this case."

---

[1] All of these allegations are contained in the complaint under the claims of Carmen Lopez. Although many of these allegations are incorporated by reference into the separate claims of the other four plaintiffs, certain other allegations essential to state a cause of action are not incorporated by reference, apparently due to the inadvertence of counsel. On remand, plaintiffs will have the opportunity to amend the complaint.

II.

Since "the applicability of a statutory immunity does not even arise until it is determined that a defendant otherwise owes a duty of care to the plaintiff" (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]), we first consider whether RTD has a duty to protect its passengers from assaults by fellow passengers.

Civil Code section 2100 provides: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." ▮▮ ▮ ▮▮▮▮ The duty imposed by section 2100 applies to public carriers as well as private carriers and requires them to do all that human care, vigilance, and foresight reasonably can do under the circumstances. (*Acosta* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72].)[2] Common carriers are not, however, insurers of their passengers' safety. Rather, the degree of care and diligence which they must exercise is only such as can reasonably be exercised consistent with the character and mode of conveyance adopted and the practical operation of the business of the carrier. (*Valente* v. *Sierra Railway Co.* (1910) 158 Cal. 412, 416-417 [111 P. 95]; *Finley* v. *City & County of S.F.* (1952) 115 Cal.App.2d 116, 120 [251 P.2d 687]; 11 Cal.Jur.3d, Carriers, § 63, p. 426.)

It has been held that the duty imposed upon carriers by Civil Code section 2100 includes a duty to protect passengers from assaults by fellow passengers. (*Terrell* v. *Key System* (1945) 69 Cal.App.2d 682, 686 [159 Cal.Rptr. 704].) In *Terrell,* a number of boisterous and quarrelsome passengers were engaged in a crap game on board defendant's train.[3] An argument erupted,

---

[2]Government Code section 815 provides in part that, "*Except as otherwise provided by statute*: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Italics added.) Thus, in California, all government tort liability must be based on statute (*Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140]). However, the statute providing for liability need not be part of the Tort Claims Act itself. (Gov. Code, § 811.8; *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.8, p. 39.) Nor must the statute provide on its face that it is applicable to public entities. "Rather, a liability is deemed 'provided by statute' if a statute defines the tort in general terms." (*Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481, 487 [137 Cal.Rptr. 512]; see also *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 933 [101 Cal.Rptr. 568, 496 P.2d 480]; and Van Alstyne, Cal. Government Tort Liability Practice, *supra,* at p. 38.) Although we applied Civil Code section 2100 to RTD in *Acosta* v. *Southern California Rapid Transit District, supra,* we did not expressly address whether section 2100 "otherwise provide[s]" for the liability of a public entity within the meaning of Government Code section 815. We now expressly hold that Civil Code section 2100 does so provide.

[3]Unlike RTD, the defendant in *Terrell* was a private carrier. As we shall explain, however, this distinction is not controlling.

a "general melee ensued," and the plaintiff was knocked off the moving train, suffering serious injury. No effort was made by the conductor, or any other employee of the carrier, to stop the crap game, control the boisterous conduct of the drunken participants or maintain order in any way. Reversing a judgment of nonsuit, the court held: "We can see no reason not to apply the rule of Civil Code section 2100 that 'A carrier of persons for reward must use utmost care and diligence for their safe carriage' to the recognized duty of a carrier to protect a passenger from assaults by fellow passengers. [¶] This duty can only arise if in the exercise of the required degree of care the carrier has or should have knowledge of conditions from which it may reasonably be apprehended that an assault on a passenger may occur [cita-, tions], and has the ability in the exercise of that degree of care to prevent the injury [citations]" (69 Cal.App.2d at p. 686). The court concluded that "it was a jury question whether the conductor, with notice of the boisterous and vituperative conduct of the drunken crap shooters engaged in the particular game, should not have taken some steps to maintain or restore order before tempers got so far out of control that he was powerless to prevent the injury which occurred to plaintiff." (*Id.*, at p. 688.)

The holding of *Terrell* is supported by the overwhelming weight of authority. Virtually all courts and all commentators who have considered the issue have concluded that a common carrier's duty to its passengers includes a duty to protect them from assaults by fellow passengers. (See, e.g., *McPherson* v. *Tamiami Trail Tours, Inc.* (5th Cir. 1967) 383 F.2d 527, 531 [applying Georgia law]; *McCoy* v. *Chicago Transit Authority* (1977) 69 Ill.2d 280 [13 Ill.Dec. 690, 371 N.E.2d 625, 627-628]; *Jackson* v. *Bi-State Transit System* (Mo. App. 1977) 550 S.W.2d 228, 232; *Wesley* v. *Greyhound Lines, Inc.* (1980) 47 N.C.App. 680 [268 S.E.2d 855, 859-860]; *Green Bus Lines* v. *Ocean Accident & Guaranty Corp.* (1942) 287 N.Y. 309 [39 N.E.2d 251, 253, 162 A.L.R. 241]; *Mangini* v. *Southeastern Pennsylvania Transp. Au.* (1975) 235 Pa.Super. 479 [344 A.2d 621, 623]; *Hanback* v. *Seaboard Coastline Railroad* (D.S.C. 1975) 396 F.Supp. 80, 86; *City of Dallas* v. *Jackson* (Tex. 1970) 450 S.W.2d 62, 63; Rest.2d Torts, § 314A, § 315, com. c. at p. 123; Prosser & Keeton, Torts (5th ed. 1984) § 56, p. 383; 3 Michie on Carriers (1915) § 2553, p. 2015.) And in most jurisdictions, courts have imposed the same high duty of care in this regard that common carriers owe to their passengers generally. (*Terrell, supra,* 69 Cal.App.2d at p. 685; 14 Am.Jur.2d, Carriers, § 1065, p. 487; 3 Michie on Carriers, *supra,* § 2553, p. 2016; but cf. *Rodriguez* v. *New Orleans Public Serv., Inc.* (La. 1981) 400 So.2d 884, 887.)

RTD urges that, even if *private* carriers have a duty to protect passengers from assaults by fellow passengers, this duty should not be imposed upon *public* carriers. First, noting that it operates some 220 bus lines over an

area of 2,200 square miles with approximately 2,000 buses in service during peak hours, RTD contends that, "To impose [upon it] the costs of trying to prevent third-party assaults would create a colossal financial burden on the District." RTD argues that "[n]othing short of an armed security force could be expected to effectively curb criminal violence" on board its buses.

Even if budgetary constraints alone were sufficient reason to exempt a public carrier from the duties imposed upon private carriers (cf. *Thompson v. County of Alameda, supra,* 27 Cal.3d 741, 750), we do not find RTD's argument persuasive. Contrary to RTD's contention, the cost and feasibility of providing an armed security force is not the issue here. Rather, the issue before us is a more general one: whether RTD, as a public carrier, has a duty to use utmost care and diligence—whatever that may require in a particular case—to protect its passengers from assaults by fellow passengers.

Finding such a duty to exist is not the functional equivalent of finding a duty to provide an armed security guard on every bus. There are a number of actions a carrier might take short of placing an armed guard on each bus which, in a given case, might be sufficient to meet the duty imposed by Civil Code section 2100. For instance, where the disorderly conduct of certain passengers threatens the safety of others, the bus driver (subject, of course, to reasonable concern for his own safety), might warn the unruly passengers to quiet down or get off the bus (see, e.g., *City of Dallas v. Jackson, supra,* 450 S.W.2d at p. 63; *La Sota v. Philadelphia Transp. Co.* (1966) 421 Pa. 386 [219 A.2d 296, 299]); alert the police and summon their assistance (see, e.g., *Mangini v. Southeastern Pennsylvania Transp. Au., supra,* 344 A.2d at p. 623; *Rodriguez v. New Orleans Public Serv., Inc., supra,* 400 So.2d at p. 888); or, if necessary, eject the unruly passengers (Civ. Code, § 2188).[4] Carriers could provide radio communication between the bus driver and local police or bus headquarters to enable the driver to call for assistance when needed, and buses could be equipped with alarm lights (Veh. Code, § 25275.5) to alert nearby police or carrier personnel of

---

[4]RTD relies on *Taeleifi v. Southern Cal. Rapid Transit Dist.* (1982) 130 Cal.App.3d 366 [181 Cal.Rptr. 697] to support its argument that bus drivers have no duty to take any action to protect passengers from assaults by fellow passengers. In *Taeleifi,* the plaintiff's complaint alleged that a "dangerous condition" existed aboard defendant's buses by virtue of the fact that defendant permitted "violent hoodlums, derelicts and other such individuals" to ride its buses. Having concluded that the complaint failed to state a cause of action under Government Code section 835 (imposing liability for injuries caused by a dangerous condition of public property), the court added in dictum that, to the extent the complaint alleged defendants had a duty to prevent criminal assailants from boarding its buses in the first place, "we note that public policy militates against the imposition of such a duty" (130 Cal.App.3d at p. 369). Because no such duty is alleged in the complaint before us, we express no views on the matter. However, to the extent *Taeleifi* can be read to hold that a bus driver's only duty to passengers is to "drive the bus and collect fares" (130 Cal.App.3d at p. 369), it is disapproved.

criminal activity taking place on board the bus. Bus drivers, especially those on routes with a history of criminal activity, could be trained to recognize and deal with potentially volatile situations.

We do not mean to suggest that these are the only actions a carrier need take to meet its duty to passengers or that, in a particular case, a carrier will necessarily breach its duty if it fails to take any or all of these actions. The point is simply that there are a number of "precautionary measures" a public carrier might take which would impose little, if any, financial burden upon the district. Thus, we cannot agree with RTD that application of the duty imposed by Civil Code section 2100 will necessarily "create a colossal financial burden on the District."

RTD next argues that, whatever the duties of a private carrier, a public carrier has no duty to protect passengers from third-party assaults absent the existence of a "special relationship."[5] RTD cites our recent decision in *Williams* v. *State of California* (1983) 34 Cal.3d 18 [192 Cal.Rptr. 233, 664 P.2d 137], for the proposition that "a public entity is deemed to stand in a 'special relationship' with members of the public *only* where the entity voluntarily assumes a protective role and induces reliance on its actions." Since no such detrimental reliance is alleged in this case, RTD argues, it had no duty to protect plaintiffs. RTD misconstrues our holding in *Williams.*

The issue in *Williams* was whether a highway patrolman who comes to the aid of an injured or stranded motorist has an affirmative duty to secure information or preserve evidence for civil litigation between the motorist and third parties. In discussing the scope of a *police officer's* duties, we stated: "[A]lthough 'no special relationship may exist between members of the California Highway Patrol and the motoring public generally, . . .'" a special relationship giving rise to an affirmative duty on behalf of the police officer may nonetheless arise when the police officer "voluntarily assumes a protective duty toward a certain member of the public and undertakes action on behalf of the member, thereby inducing reliance." (34 Cal.3d at p. 24.)

Our statement in *Williams* was essentially a particularized application of the "good Samaritan" doctrine which provides that a "volunteer who, *having no initial duty to do so,* undertakes to come to the aid of another . . . is under a duty to exercise due care in performance and is liable if (a) his

---

[5]"As a general rule, one owes no duty to control the conduct of another, nor to warn those endangered by such conduct. Such a duty may arise, however, if '(a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relationship exists between the actor and the other which gives the other a right to protection' [citations]." (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at p. 203.)

failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking" *(Williams, 34 Cal.3d at p. 23*, italics added). █ Implicit in our discussion in *Williams* is the recognition that some relationships by their very nature are "special" ones giving rise to an "initial duty" to come to the aid of others, regardless of whether there has been detrimental reliance in a particular case. The relationship between a common carrier and its passengers is just such a special relationship, as is the relationship between an innkeeper and his or her guests, between a possessor of land and those who enter in response to the landowner's invitation and between a psychiatrist and his or her patients. (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 436 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; Rest.2d Torts, § 314A, § 315, com. c. at p. 123; Prosser & Keeton, *supra*, § 56, p. 383.)

Indeed, the special relationship between a carrier and its passengers is even greater than that between other types of businesses and their customers who come on to the "premises" for business purposes. As Justice Johnson noted in his opinion for the Court of Appeal in this case, bus passengers are "sealed in a moving steel cocoon." Large numbers of strangers are forced into very close physical contact with one another under conditions that often are crowded, noisy, and overheated. At the same time, the means of entering and exiting the bus are limited and under the exclusive control of the bus driver. Thus, passengers have no control over who is admitted on the bus and, if trouble arises, are wholly dependent upon the bus driver to summon help or provide a means of escape. These characteristics of buses are, at the very least, conducive to outbreaks of violence between passengers and at the same time significantly limit the means by which passengers can protect themselves from assaults by fellow passengers.[6] We believe these characteristics of public transportation, along with the duty of utmost care and diligence imposed by Civil Code section 2100, provide a more than ample basis for finding a special relationship between common carriers and their passengers.

Contrary to RTD's assertion, there is nothing anomalous about finding this kind of special relationship between a common carrier and its passengers when no such relationship has been found to exist between police officers and members of the general public. In contrast to a police officer's

---

[6]For this reason, we disagree with the holding of the Louisiana, Supreme Court in *Rodriguez* v. *New Orleans Public Serv., Inc., supra,* 400 So.2d at page 887, that there is a "lack of any connexity between transportation by public carriers and batteries upon passengers" sufficient to justify imposing a duty of utmost care (as opposed to a duty of reasonable care) upon carriers to protect passengers from third-party assaults.

generalized duty to the public as a whole, common carriers have a specific statutory duty to provide for the safe carriage of those specific individuals who have accepted the carrier's offer of transportation and have put their safety, and even their lives, in the carrier's hands.

RTD relies heavily on *Hernandez* v. *Southern California Rapid Transit Dist.* (1983) 142 Cal.App.3d 1063 [191 Cal.Rptr. 436], to support its assertion that no special relationship exists between RTD and its passengers. In *Hernandez,* a passenger on board defendant's bus was shot and killed by a fellow passenger, following a loud and boisterous argument. In holding that the trial court properly sustained defendant's demurrer, the court held that the plaintiff (the deceased's mother), "did not, and cannot, allege the existence of a 'special relationship' that would take her cause of action outside the breadth of Government Code section 845." (*Id.,* at p. 1067, fn. omitted.) The court in *Hernandez* apparently was under the mistaken belief that the existence of a special relationship was controlling on the issue of *immunity* and that where "there exists a 'special relationship' between the public entity and plaintiff, liability may be imposed irrespective of any grant of immunity set forth in Government Code section 845." (*Id.,* at p. 1067, citations omitted.) The fallacy of this position was exposed in *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189], in which Justice Reynoso, writing for the Court of Appeal, emphasized that the concept of "special relationship" pertains to the issue of *duty* and that duty "is only a threshold issue, beyond which remains the immunity barriers. . . ." (73 Cal.App.3d at p. 706; see also *Williams, supra,* 34 Cal.3d at pp. 22-23; *Davidson, supra,* 32 Cal.3d at pp. 201-202.)

It is unclear to what extent the *Hernandez* court's finding of no special relationship was based on its misunderstanding of the effect a contrary finding might have on the issue of immunity. In any event, to the extent *Hernandez* holds there is no special relationship between a public carrier and its passengers giving rise to a duty on the part of the carrier to protect its passengers from assaults by fellow passengers, *Hernandez* is disapproved.[7]

---

[7]We note that the high duty of care owed by private carriers to protect passengers from third-party assaults has been applied to public carriers by a number of courts in other jurisdictions (see, e.g., *McCoy* v. *Chicago Transit Authority, supra,* 371 N.E.2d 625; *Mangini* v. *Southeastern Pennsylvania Transp. Au., supra,* 344 A.2d 621; *City of Dallas* v. *Jackson, supra,* 450 S.W.2d 62). We are aware of only one state in which a court has expressly held that public carriers have no duty to protect their passengers from assaults by any third parties. In *Weiner* v. *Metropolitan Transp. Authority* (1982) 55 N.Y.2d 175 [448 N.Y.S.2d 141, 433 N.E.2d 124], the New York high court held that, "The New York City Transit Authority owes no duty to protect a person on its premises from assault by a third person, absent facts establishing a special relationship between the authority and the person assaulted" (433 N.E.2d at p. 125). *Weiner* is of little assistance to us for several reasons.

First, notwithstanding the court's use of "duty" language, its holding appears to have

In summary, we hold that Civil Code section 2100 imposes upon all common carriers—public or private—a duty of utmost care and diligence to protect their passengers from assaults by fellow passengers. We reiterate, however, that carriers are not insurers of their passenger's safety and will not automatically be liable, regardless of the circumstances, for any injury suffered by a passenger at the hands of a fellow passenger. Rather, a carrier is liable for injuries resulting from an assault by one passenger upon another only where, in the exercise of the required degree of care, the carrier has or should have knowledge from which it may reasonably be apprehended that an assault on a passenger may occur, and has the ability in the exercise of that degree of care to prevent the injury. (*Terrell, supra,* 69 Cal.App.2d at p. 686.)

## III.

RTD argues that even if it has a duty to protect passengers from assaults by fellow passengers, it is immune from liability under the facts alleged in plaintiffs' complaint. Plaintiffs' complaint alleges that, after being notified of the "violent argument" among passengers, the bus driver "failed to take any precautionary measures and continued to operate the said bus" and that, by their negligence, RTD and the bus driver "allow[ed] the passengers involved in the violent argument to engage in a violent physical fight." RTD first argues these allegations amount to a claim that RTD failed to provide police protection to plaintiffs and that the complaint therefore fails to state a cause of action because Government Code section 845 immunizes RTD from liability for failure to provide police services.

---

been based on *immunity* grounds (433 N.E.2d at pp. 125, 127). Second, in holding that no duty existed "absent facts establishing a special relationship," the New York court apparently had in mind the kind of "special relationship" that can arise between police officers and individual members of the public when the officer assumes a protective role and induces reliance on the part of the injured individual. (See *Weiner* court's reference at p. 126 to *Florence* v. *Goldberg* (1978) 44 N.Y.2d 189 [404 N.Y.S.2d 583, 375 N.E.2d 763] and *Schuster* v. *City of New York* (1958) 5 N.Y.2d 75 [180 N.Y.S.2d 265, 154 N.E.2d 534]; see also *Bardavid* v. *NYCTA* (1983) 97 App.Div.2d 353 [467 N.Y.S.2d 360, 361].) As we have explained, this analysis applies only where there does not already exist a special relationship between the parties (like that between a carrier and its passengers) giving rise to an "initial duty" to act. Third, *Weiner* did not involve an assault on a passenger by a fellow passenger aboard a bus. Rather, the plaintiff in *Weiner* was attacked by an unidentified man on the steps leading into the defendant's subway station.

In *Ammirati* v. *New York City Transit Authority* (1983) 117 Misc.2d 213 [457 N.Y.S.2d 738], a New York intermediate appellate court relied on *Weiner* in holding that the New York Transit Authority has no duty to install shatterproof glass on its trains to protect passengers from rocks thrown by third persons from outside the train. Noting that "[i]t may be contended that *Weiner* is based upon the general rule that defendant should be immune from liability in cases involving 'the allocation of police resources to protection from criminal wrongdoing,'" the *Ammirati* court nonetheless held that *Weiner* "effectively immunized defendant from liability in any case where a passenger is attacked by a third party . . ." (457 N.Y.S.2d at p. 741). We do not read *Weiner* as broadly as the *Ammirati* court and, in any event, do not find the New York cases persuasive.

Government Code section 845 provides: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

The Law Revision Commission comment to Government Code section 845 explains the policy considerations underlying that section: "This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions." As we recently explained in *Peterson v. San Francisco Community College District, supra,* 36 Cal.3d at page 815, the immunity provided in section 845 "is meant to protect the budgetary and political decisions which are involved in hiring and deploying a police force."

Contrary to RTD's assertion, section 845 is not implicated here. Plaintiffs' complaint does not allege, nor do plaintiffs argue that RTD was negligent in failing to provide police personnel or armed guards on board its buses. (Cf. *Peterson, supra,* 36 Cal.3d at p. 814.) Rather, the gravamen of plaintiffs' complaint is that the bus driver, who was already hired by RTD and was present on the scene and aware of the violent disturbance, did absolutely nothing to protect plaintiffs, but simply continued to drive the bus as if nothing was wrong.

As we have explained, the duty imposed by Civil Code section 2100 might require a bus driver to take any number of "precautionary measures" to prevent harm to passengers, such as warning unruly passengers to behave, ejecting those who refuse to behave, and summoning the assistance of police. None of these "precautionary measures" involve the kind of "budgetary and political decisions which are involved in hiring and deploying a police force." Nor do they constitute "police services" under any common understanding of that term. The fact that certain "precautionary measures" would have the effect of *protecting* passengers from *criminal* assaults does not transform them into "police protection services."

It is well established that the allegations of a complaint must be liberally construed with a view to attaining substantial justice between the parties (Code Civ. Proc., § 452; *King v. Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857]). We have also held that, "in governmental tort cases 'the rule is liability, immunity is the exception' . . . .

Unless the Legislature has clearly provided for immunity, the important societal goal of compensating injured parties for damages caused by willful or negligent acts must prevail." (*Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93], citations omitted.)

With these principles in mind, we conclude that Government Code section 845 does not immunize RTD from liability under the facts alleged in plaintiffs' complaint.[8] Therefore, to the extent the trial court's ruling sustaining RTD's demurrer was based on Government Code section 845, it was erroneous.

RTD next argues that, to the extent plaintiffs' complaint is based on the bus driver's failure to take protective action, it fails to state a cause of action because the bus driver is immune from liability under Government Code section 820.2 and, hence under Government Code section 815.2,[9] RTD is also immune. Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." RTD argues that a bus driver's decision whether, and in what way to intervene in an altercation between passengers is a discretionary decision giving rise to the immunity provided in section 820.2.

In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], this court rejected a purely semantic approach to determining whether a given act is discretionary or ministerial, noting that any act, no matter how ministerial, involves some degree of "discretion" and judgment in the literal sense of those words (69 Cal.2d at pp. 787-788). Instead, the *Johnson* court looked to the policy considerations underlying the grant of immunity for discretionary acts. The court concluded that section 820.2 confers immunity only with respect to those "basic policy decisions" which have been committed to coordinate branches of government, and does not immunize government entities from liability for subsequent ministerial actions taken in the implementation of those basic policy decisions (*id.,* at pp. 793-797). This distinction is sometimes characterized as that between the "planning" and the "operational" levels of decision-making (*id.,* at p. 794).

---

[8]Because plaintiffs do not allege that RTD was negligent in failing to provide security guards on board its buses, we need not, and do not decide whether Government Code section 845 necessarily immunizes a public carrier from liability where a plaintiff's negligent action is based on an allegation that the carrier breached its duty under Civil Code section 2100 by failing to provide security guards on its buses.

[9]Government Code section 815.2, subdivision (b), provides: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

Even if RTD were correct in asserting that a bus driver's decision whether to protect passengers from third-party assaults is a "basic policy decision," this decision has already been made by the Legislature in enacting Civil Code section 2100 and in authorizing RTD to conduct business as a common carrier. ■ Section 2100, in essence, represents a decision by the Legislature that bus drivers *must* act to protect passengers from assaults by fellow passengers, at least to the extent required by the exercise of utmost care and diligence and consistent with their personal safety.

■ Furthermore, an individual bus driver's decision concerning what *form* of protective action to take in a particular case simply does not "rise to the level of governmental decisions calling for judicial restraint" (*Johnson*, 69 Cal.2d at p. 797). Rather, it is the kind of ministerial, "operational" action taken to implement the Legislature's basic policy decision, that is not immunized by Government Code section 820.2. The fact that in a particular case a bus driver might have alternative courses of action from which to choose and this choice might involve a certain degree of judgment, does not elevate the driver's decision to the level of "basic policy." (See, e.g., *Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d at p. 445; *Johnson, supra,* 69 Cal.2d at p. 788.)

■ Moreover, even if a bus driver's decision concerning what kind of protective action to take could be considered a "discretionary" one, it would be improper to sustain RTD's demurrer on the basis of Government Code section 820.2. Section 820.2 provides immunity only for the acts or omissions that are "the result of the *exercise* of the discretion" vested in a public employee (italics added). Therefore, the court in *Johnson* held that to avail itself of the discretionary immunity provided by section 820.2, a public entity must prove that the employee, in deciding to perform (or not to perform) the act which led to plaintiff's injury, *consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives. "[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in 'discretionary activity' is irrelevant if, in a given case, the employee did not render a considered decision" (69 Cal.3d at pp. 794-795, fn. 8). Such a showing was not and could not have been made by RTD at the demurrer stage. (See *Holman* v. *State of California* (1975) 53 Cal.App.3d 317, 337 [124 Cal.Rptr. 773]; *Biggers* v. *Sacramento City Unified Sch. Dist.* (1972) 25 Cal.App.3d 269, 274-275 [101 Cal.Rptr. 706]; *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053, 1058 [84 Cal.Rptr. 27]; cf. *Roseville Community Hosp.* v. *State* (1977) 74 Cal.App.3d 583 [141 Cal.Rptr. 593]). It therefore would be error to sustain RTD's demurrer based on Government Code section 820.2.

In sustaining RTD's demurrer, the trial court held that "RTD, a public entity, is immune from liability under the facts of this case." Since we conclude that neither Government Code section 845 nor 820.2 immunizes RTD from liability under the facts alleged in plaintiffs' complaint, we hold that the trial court erred in sustaining RTD's demurrer and dismissing plaintiffs' action on the grounds that RTD was immune from liability.

## IV.

Finally, RTD argues that, independent of the substantive issues of duty and immunity, plaintiffs' first amended complaint is fatally defective because it fails to allege with particularity what the bus driver could have and should have done to protect plaintiffs from injury.

Ordinarily, negligence may be pleaded in general terms and the plaintiff need not specify the precise act or omission alleged to constitute the breach of duty. (3 Witkin, Cal. Procedure (2d ed. 1971) §§ 465, 466, pp. 2119-2120.) However, because under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." (*Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 819 [131 Cal.Rptr. 854]; see also *Shields* v. *County of San Diego* (1984) 155 Cal.App.3d 103, 113 [202 Cal.Rptr. 30]; *Mittenhuber* v. *City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5 [190 Cal.Rptr. 694]; *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 809 [75 Cal.Rptr. 240]; Van Alstyne, Cal. Government Tort Liability Practice, *supra,* § 5.77, p. 569. supp. 96.)

Plaintiffs' complaint clearly meets the requirement of specific pleading with respect to the existence of a duty of care. Plaintiffs allege that RTD is a common carrier, that plaintiffs were passengers on board one of RTD's buses, that RTD knew assaults regularly occurred on this bus route, and that the bus driver had been specifically notified that a violent argument had erupted among the passengers. These facts, if true, give rise to a duty of care on behalf of RTD to protect plaintiffs from assaults by fellow passengers.

Similarly, although plaintiffs' complaint does not allege what specific action they believe RTD should have taken to protect them from injury, the gravamen of the complaint falls outside the scope of the statutory immunity provisions. Plaintiffs allege that the bus driver, after being notified that a violent argument was taking place, did absolutely *nothing* to maintain order

or protect passengers from injury, but simply continued to drive the bus as if nothing was wrong. Under the circumstances, plaintiffs have pled "facts sufficient to show [their] cause of action lies outside the breadth of any applicable statutory immunity." (*Keyes* v. *Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885-886 [180 Cal.Rptr. 586].)

## V.

In summary, we hold that RTD has a duty of utmost care and diligence to protect its passengers from assaults by fellow passengers and that RTD is not immune from liability under the facts alleged in plaintiffs' complaint. We emphasize that our holding is a limited one. We do not hold that RTD breached its duty to plaintiffs nor that Government Code sections 845 and 820.2 will necessarily be inapplicable to the facts of this case as those facts unfold during discovery and at trial. We hold only that plaintiffs' complaint alleges facts sufficient to establish the existence of a duty and that the facts alleged do not implicate sections 845 and 820.2 in such a way as to bar plaintiffs from bringing this action.

The judgment dismissing plaintiffs' complaint is reversed. On remand, plaintiffs shall be given the opportunity to amend their complaint.[10]

Mosk, J., Broussard, J., Reynoso, J., Lucas, J., and Kaus, J.,* concurred.

**BIRD, C. J.**—I would adopt as my own the very fine opinion of Justice Earl Johnson in the Court of Appeal. It follows:†

This case presents a difficult and important issue. Because the Southern California Rapid Transit District [hereafter RTD] is a public corporation, must the victims of criminal violence on board its buses be denied recovery for the RTD's breach of duty to "use the utmost care and diligence for their safe carriage"? (Civ. Code, § 2100.) [I would] hold RTD is not immunized from fulfilling the same duty which would be imposed on a private company operating those same buses.

---

[10]See footnote 1, *ante,* at page 784.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

†Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are used to denote insertions or additions by this court. Double brackets are used to denote brackets in the original.

FACTS AND PROCEEDINGS BELOW

Plaintiffs appeal from a judgment dismissing their complaint following the sustaining of defendant's demurrer without leave to amend.

For purposes of appeal we accept as true the properly pleaded factual allegations of the complaint. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].) Furthermore, the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].)

Plaintiffs allege the following facts. Defendant, [RTD], is a public corporation engaged in business as a common carrier for hire transporting members of the general public in Los Angeles County.

Carmen and Carla Lopez, Yolanda and Jose De Dios and Zenaida Arce were riding as paying passengers on one of defendant's buses at about 6:40 in the evening near La Brea Avenue and Venice Boulevard in Los Angeles. At that time a fight broke out among some of the passengers on the bus. The driver of the bus knew that the fight was taking place but "failed to take any precautionary measures." The five plaintiffs sustained injuries as a result of the fight.

Plaintiffs further allege the RTD knew violent incidents occurred daily or weekly on board its buses and that there had been previous assaults on passengers and operators of buses on this particular route. Before this particular altercation broke out, the operator was aware that a group of juveniles had boarded the bus and were harassing other passengers.[1]

Defendant demurred to plaintiffs' first amended complaint on the ground, inter alia, that it failed to state a cause of action; specifically that the RTD owed no duty of care to plaintiffs and that it is immune from liability by reason of Government Code section 845.[2] The trial court sustained the de-

---

[1]These allegations are contained in Carmen Lopez's claim but are not incorporated by reference in the claims of the other four plaintiffs. Since these allegations are essential to state a cause of action, see discussion *post,* page[s] [798-799], we assume their absence is due to inadvertence on the part of plaintiffs' counsel. On remand, plaintiffs will have the opportunity to amend the complaint.

[2]Government Code section 845 provides: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

murrer without leave to amend on the ground the RTD is immune from liability under the facts of this case by reason of section 845.

DECISION

I. *RTD Owed a Duty of Care to Plaintiffs.*

We first consider defendant's claim that it had no duty to protect plaintiffs from an assault and battery on board its bus. No question of statutory immunity arises until it is determined that the defendant otherwise owes a duty of care to the plaintiffs and thus would be liable in the absence of immunity. (*Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 307 [191 Cal.Rptr. 704].)

The duty owed by a common carrier to its passengers is set forth in Civil Code section 2100: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill." Section 2100 has been held to impose a duty on a common carrier to protect its passengers from assault by fellow passengers. (*Terrell* v. *Key System* (1945) 69 Cal.App.2d 682 [159 P.2d 704].) There the court stated: "The duty of a carrier of persons for reward is codified in Civil Code, section 2100. In general, such carriers must exercise the utmost care and diligence for the safety of their passengers consistent with the character and mode of conveyance adopted and the practical operation of the carrier's business. (4 Cal.Jur. § 87, pp. 931-934.) While there is some diversity among the authorities in other jurisdictions as to the degree of care required of carriers for hire to protect their passengers from the assaults of fellow passengers, in a large majority of American states whose courts have passed on the question, it is held that the carrier is required to exercise the same high degree of care for that purpose as it is bound to generally. [[Citations omitted.]] . . . We can see no reason not to apply the rule of Civil Code, section 2100 that 'A carrier of persons for reward must use the utmost care and diligence for their safe carriage' to the recognized duty of a carrier to protect a passenger from assaults by fellow passengers." (*Id.*, at pp. 684-686.)

The *Terrell* opinion makes it clear that section 2100 did not enact a rule of strict liability. "This duty can only arise if in the exercise of the required degree of care the carrier has or should have knowledge of conditions from which it may reasonably be apprehended that an assault on a passenger may occur . . . and has the ability in the exercise of that degree of care to prevent the injury." (*Id.*, at p. 686, citations omitted.)

The complaint in the case at bar meets the pleading requirement of *Terrell.* It alleges that the driver of the bus knew that a group of juveniles had

boarded the bus and were harassing the passengers; the RTD knew violent incidents occurred on its buses with regularity; and knew there had been previous assaults on passengers on this particular route.

Furthermore, a special relationship existed between the plaintiffs and the RTD which, while not precluding the application of sovereign immunity principles, has an important impact on their application.

In *Johnson* v. *County of Los Angeles, supra,* 143 Cal.App.3d 298, 308, [the Court of Appeal] alluded to the common law duty to control the conduct of another when the defendant stands in a special relationship to the foreseeable victim of such conduct. The carrier-passenger relationship is such a special relationship. (Prosser, Law of Torts (4th ed. 1971) pp. 174-175, fn. 68; Rest.2d Torts, §§ 314A, 315 and com. at p. 123; and see *Terrell* v. *Key System, supra,* 69 Cal.App.2d 682.)

The relationship between the RTD and its passengers is distinguishable from the relationship between the police and the public. A law enforcement officer's duty to protect the citizenry is a general duty owed to the public as a whole. (*South* v. *Maryland* (1856) 59 U.S. 396, 403 [15 L.Ed. 433, 435].) The victim of a crime that the police might have prevented through reasonable diligence cannot recover because, absent a special relationship creating a special duty, the police do not owe the victim a duty of care. (See, e.g., *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 9-10 [120 Cal.Rptr. 5] and Note, *Police Liability for Negligent Failure to Prevent Crime* (1981) 94 Harv.L.Rev. 821, 824.) In contrast, the RTD's duty is to a specific group: its passengers. These passengers have accepted RTD's offer of transportation and have placed themselves in the care and custody of the RTD. (Cf. *Riley* v. *Davis* (1922) 57 Cal.App. 477, 481 [207 P. 699]; *Grier* v. *Ferrant* (1944) 62 Cal.App.2d 306, 310-311 [144 Cal.Rptr. 631].) And while the risk of crime is common to all citizens, the danger is enhanced for bus passengers who may be, in effect, sealed in a moving steel cocoon. They have no say as to who else may be admitted onto the bus and they may have no means of avoiding another passenger bent on attack. The means of summoning help and the means of escape may be in the exclusive control of the bus driver.

[I] conclude the plaintiffs' dependence on the RTD for their safety gives rise to a special relationship between the parties in the case at bar. (Cf. *Mann* v. *State of California* (1977) 70 Cal.App.3d 773, 779-780 [139 Cal.Rptr. 82]; Rest.2d Torts (1965) § 314A, coms. b, c; Fleming, Law of Torts (4th ed. 1971) p. 143.) [] [I] recognize that [one] division of [the Court of Appeal] has held no special relationship exists between a common carrier and its passengers. (*Hernandez* v. *Southern California Rapid Transit*

*Dist.* (1983) 142 Cal.App.3d 1063, 1067 [191 Cal.Rptr. 436].) In that case plaintiff brought an action for wrongful death against the RTD alleging that her son, a passenger on an RTD bus, was killed by another passenger on the bus. Without discussing or citing any authority on the issue, the court simply stated that plaintiff "did not and cannot, allege the existence of a 'special relationship' that would take her cause of action outside the breadth of Government Code section 845." (*Ibid.*, fn. omitted.) For the reasons set forth above, [I] disagree with the holding in *Hernandez.* The authorities [I] have cited firmly establish the existence of a special relationship between a common carrier and its passengers which gives rise to a duty on the part of a carrier to protect a passenger from assaults by fellow passengers.

As noted in *Terrell,* this duty only arises if two conditions are met. First, in the exercise of reasonable skill and the utmost care and diligence the carrier knew or should have known of conditions from which it could reasonably conclude that an assault on a passenger may occur. Second, in exercising the degree of care imposed by section 2100 the carrier has the ability to prevent the injury. (69 Cal.App.2d at p. 686.)

II. *RTD Is Not Immune From Liability Because of Government Code Section 845.*

A. The Facts Alleged in the Complaint Do Not Give Rise to the Defense of Immunity From Failing to Provide Police Protection.

Where an affirmative defense appears on the face of the complaint that defense may be raised by a demurrer for failure to state a cause of action. (Code Civ. Proc., § 430.10, subd. (e) and see generally, 9 Grossman & Van Alstyne, Cal. Practice, Pleading—Civil Actions (2d ed. 1981) §§ 1271-1272, pp. 6-9.)

In the case at bar, plaintiffs are not alleging expressly that defendant failed to provide "police protection services." Plaintiffs' allegations, fairly construed, are that defendant failed in its duty to "provide everything necessary" for plaintiffs' "safe carriage." (Civ. Code, § 2100.) This duty is not the functional equivalent of a duty to provide guards riding shotgun on defendant's buses. Something more, something less or something altogether different may be necessary depending on the circumstances. There are a number of steps defendant might take to help keep passengers safe from crime on board its buses. These steps include providing alarm lights (Veh. Code, § 25275.5), radio communication between the driver and local police or bus headquarters, reserving the seats near the driver for particularly vulnerable passengers, and refusing passage to persons the driver has reason to know have previously engaged in violent conduct on defendant's buses.

The test, as stated in section 2100, is whether the carrier "exercise[[d]] . . . a reasonable degree of skill."

Whether these or other steps were taken or could have feasibly been taken under the circumstances of this case goes to the question of breach of duty; a question to be decided in subsequent proceedings. [I] mention the foregoing examples merely to make the point that plaintiffs' complaint does not raise the affirmative defense of immunity under Government Code section 845 merely by alleging that plaintiffs were the victims of a crime on board defendant's bus.

B. RTD is Not Immune From Liability by Reason of Section 845 for Failing to Adequately Protect Its Passengers From Assault by Fellow Passengers.

Every failure by a government entity to prevent harm is not automatically immunized by section 845. (See, e.g., *Mann* v. *State of California, supra,* 70 Cal.App.3d at p. 778; *Thompson* v. *County of Alameda*[, *supra,*] 27 Cal.3d 741, 747; *Green* v. *City of Livermore* (1981) 117 Cal.App.3d 82, 87-88 [172 Cal.Rptr. 46].)

[I] believe the issue of police protection immunity injected by the RTD and relied on by the trial court is a red herring. Plaintiffs do not urge nor did [I find] in the preceding section (*ante,* pp. [799-800]) that the RTD owed a duty to provide plaintiffs "police protection services." The RTD's liability does not rest on the presence or absence of police protection on board its buses. It arises from a duty imposed by Civil Code section 2100 on every common carrier to anticipate that which is reasonably foreseeable and to prevent that which is reasonably preventable in the way of violent injury to its passengers. (*Terrell* v. *Key System, supra,* 69 Cal.App.2d at pp. 684-686.) The RTD therefore is liable when it fails to provide its passengers the protection to which they are entitled by virtue of this obligation. The extent of the protection owed plaintiffs and whether it was provided are fact questions. (*Id.,* at p. 686; cf. *Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 633 [193 Cal.Rptr. 600].) A jury might find that the measures required to discharge the duty imposed by section 2100 included stationing a security guard on buses traveling the route traveled by plaintiffs. If the jury made such a finding and the finding was supported by substantial evidence, defendant would be liable for breaching its duty to "exercise . . . a reasonable degree of skill," to "use the utmost care and diligence for [[its passengers']] safe carriage" and to "provide everything necessary for that purpose."

The fact this duty of care might require the RTD to provide police protection service does not trigger governmental immunity under section 845.

Defendant RTD is under a duty to "use the utmost care and diligence" for its passengers' safety and "must provide everything necessary for that purpose." (Civ. Code, § 2100.) It is obvious from this statutory language the RTD owes more than an ordinary degree of care to its passengers. Rather, it is held to "the highest degree of care[]" (*Wilson* v. *City & County of S. F.* (1959) 174 Cal.App.2d 273, 277 [344 P.2d 828]), and "required to do all that human care, vigilance, and foresight reasonably can do under all the circumstances." (*Acosta* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 19, 27 [84 Cal.Rptr. 184, 465 P.2d 72].)

In California all governmental tort liability must be based on statute. (Gov. Code, § 815; *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648, 653 [161 Cal.Rptr. 140].)[3] There is no requirement the statute imposing liability must provide on its face that it is applicable to public bodies. "Rather, a liability is deemed 'provided by statute' if a statute defines the tort in general terms." (*Levine* v. *City of Los Angeles* (1977) 68 Cal.App.3d 481, 487 [137 Cal.Rptr. 512]; and see *Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 933 [101 Cal.Rptr. 568, 496 P.2d 480]; Van Alstyne, Cal. Government Tort Liability Practice (Cont.Ed.Bar 1980) § 2.7, p. 38.) We find the language of section 2100 of the Civil Code sufficient to impose liability on the RTD for breach of the duty to protect its passengers from assault by fellow passengers.

We turn, then, to the question whether RTD's liability is subject to the police protection immunity of section 845.[4]

The fact plaintiffs' suit is based on a specific statutory duty distinguishes this case from other cases where liability depended, at least implicitly, on defendant's failure to provide adequate police protection. (See, e.g., *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d

---

[3]It is not correct, however, that "all California governmental tort liability flows from the California Tort Claims Act . . . ." (*Keyes* v. *Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885 [180 Cal.Rptr. 586], quoted in *Hernandez* v. *Southern California Rapid Transit Dist.*, *supra*, 142 Cal.App.3d at p. 1067.) The cases cited by *Keyes* clearly state that immunity applies except as provided in the Tort Claims Act "or other statute." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Galli* v. *State of California* (1979) 98 Cal.App.3d 662, 674 [159 Cal.Rptr. 721].) The duty of care imposed on common carriers by Civil Code section 2100 has been applied in negligence actions against public entities before and after the enactment of the Tort Claims Act. (See, e.g., *Wilson* v. *City & County of S. F.*, *supra*, 174 Cal.App.2d at p. 276; *Acosta* v. *Southern Cal. Rapid Transit Dist.*, *supra*, 2 Cal.3d at p. 27.)

[4]Government Code section 845 is the only source of immunity argued by RTD and relied upon by the trial court and, insofar as [I] can determine, the only immunity plausibly applicable to this case. Thus, our discussion of the RTD's immunity is restricted to an analysis of section 845 in the context of an assault on an RTD passenger. This discussion is not necessarily applicable to RTD's immunity under other laws or other circumstances.

855] [[plaintiff beaten at night on a campus beach of the state university]]; *Stone* v. *State of California* (1980) 106 Cal.App.3d 924 [165 Cal.Rptr. 339] [[plaintiffs beaten by a gang of youths at state-owned fairgrounds]]; *Moncur* v. *City of Los Angeles* (1977) 68 Cal.App.3d 118, 122 [137 Cal.Rptr. 239] [[plaintiffs injured in bomb explosion at city airport]].)

Moreover, the fact this statutory duty arises outside the Tort Claims Act precludes a knee jerk application of the act's immunities. While Government Code section 815, subdivision (b) provides that liabilities established by the Tort Claims Act are subject to any statutory immunity, "[[n]]o similarly explicit language declares that the liabilities imposed *outside the Tort Claims Act* are subject to *any* immunity established by the act." (*Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d at p. 656, italics in original.) Faced with this circumstance [I] must determine the statutory objectives of the liability and immunity provisions and attempt to find a rational basis for harmonizing two potentially conflicting laws. (*Consumers Union of U.S., Inc.* v. *California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 446 [147 Cal.Rptr. 265] and cases cited therein.)

In *Duarte* v. *City of San Jose, supra,* the court was confronted with a statute holding a public entity liable for injuries caused by the negligent operation of a motor vehicle by its employee (Veh. Code, § 17001), and a statute immunizing a public entity from liability for any injury caused by a person escaping arrest. (Gov. Code, § 845.8, subd. (b)(2).) Edward Duarte was injured by a person escaping arrest in a stolen police car with other police cars in high speed pursuit. (100 Cal.App.2d at pp. 642, 652.) The court's approach to reconciling the conflicting provisions of sections 17001 and 845.8 was "to consider whether the liabilities imposed by legislation outside the [[Tort Claims Act]] serve a purpose that is frustrated by an immunity under the act. If so, . . . it is reasonable to conclude that the statutory liabilities must prevail." (*Id.,* at p. 656.) The court found the purpose of Vehicle Code section 17001, to hold a public entity financially accountable for its employees' torts committed with a motor vehicle during the scope of their employment, would be thwarted by the application of section 845.8. (*Ibid.*) The court then examined the objective underlying section 845.8: " 'the nature of the precautions necessary to prevent escape of prisoners . . . should be determined by the proper public officials unfettered by any fear that their decisions may result in liability.' " (*Ibid.*) The court found this public policy would not be adversely affected by holding the city liable under the facts of the case. (*Id.,* at p. 657.)

The same analytical process [] resulted in denial of liability in *State of California* v. *Superior Court* (1974) 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 128]. There the statute imposing liability, Code of Civil Procedure

section 1095, allowed damages against a government body in a mandamus action. Sections 818.4 and 821.2 immunize a public entity and public employee from liability for failure to issue a permit. The real party in interest sought review of the Coastal Commission's denial of a permit under Code of Civil Procedure section 1094.5 and damages in excess of $14 million under section 1095. (*Id.,* at p. 244.) The court found that Code of Civil Procedure section 1095 "merely authorizes damages in a mandamus proceeding where such damages are otherwise appropriate" (*id.,* at p. 246); that the purpose of administrative mandamus, to inquire into the validity of a final administrative order, would not be thwarted by application of Government Code sections 818.4 and 821.2 (*id.,* at pp. 245-246); and, that imposing liability on the authority of Code of Civil Procedure section 1095 would be tantamount to a repeal of sections 818.4 and 821.2 "since a cause of action for damages would be appropriate each time a permit was denied if the demand for damages was combined with a petition for writ of mandate to compel the issuance of the permit." (*Id.,* at p. 246.)

In the case at bar, the extraordinary duty of care imposed on a common carrier by section 2100 reflects a legislative judgment that the risk of harm to passengers is great. (See *Union Traction Co.* v. *Berry* (1919) 188 Ind. 514 [121 N.E. 655, 658, 32 A.L.R. 1171]; *Frederick* v. *City of Detroit, Dept. of Street Railways* (1963) 370 Mich. 425 [121 N.W.2d 918, 921]; Prosser, Law of Torts (4th ed. 1971) pp. 180-181.) It has long been recognized that one of the risks of public transportation is assault on the passengers. (See, e.g., *King* v. *Ohio & M. Ry. Co.* (E.D.N.Y. 1884) 22 F. 413, 414 and see generally Annot., 15 A.L.R. 868-869.) Indeed, the common expression "riding shotgun" arose from the practice of posting an armed guard on stagecoaches to protect passengers and their property from harm. (Urdang (edit.), Picturesque Expressions: A Thematic Dictionary (1980) p. 274.)

The apparent purpose of Civil Code section 2100 is to hold a common carrier accountable for its negligence or the negligence of its employees in maintaining the safety of the carrier's passengers. (*Scarborough* v. *Urgo* (1923) 191 Cal. 341, 346 [216 P. 584].) The statute makes no distinction between publicly owned and privately owned carriers.

In this case, had the carrier been privately owned there is no question it could be held liable for plaintiffs' injuries. (*Terrell* v. *Key System, supra,* 69 Cal.2d at pp. 685-686.) To immunize this alleged negligence because the defendant is a public corporation would thwart the purpose of section 2100. (Cf. *Duarte* v. *City of San Jose, supra,* 100 Cal.App.3d at p. 656.)

A generally worded code section such as Civil Code section 2100 applies to governmental bodies if no impairment of sovereign powers would result.

(*Nestle* v. *City of Santa Monica, supra,* 6 Cal.3d at p. 933; *Flournoy* v. *State of California* (1962) 57 Cal.2d 497, 498-499 [20 Cal.Rptr. 627, 370 P.2d 331].)

The sovereign power implicated by section 845 is the political decision-making which determines whether police protection should be provided at all, and, if so, the extent to which it should be provided. (4 Cal. Law Revision Com. Rep. (1963) p. 860.) "[[T]]he section was designed to prevent political decisions of policy-making officials of government from being second-guessed by judges and juries in personal injury litigation." (*Mann* v. *State of California, supra,* 70 Cal.App.3d 773, 778.) Undoubtedly the potentially disastrous fiscal consequences of liability for failure generally to prevent crime are also a consideration underlying section 845. (See, e.g., *Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240]; *et passim,* Comment, *Rehabilitation of the Victims of Crime: An Overview* (1973) 21 UCLA L.Rev. 317, 333-335; cf. Van Alstyne, *Governmental Tort Liability: A Public Policy Prospectus* (1963) 10 UCLA L.Rev. 463, 503 [[discussing immunity from failure to provide fire protection]].)

But once a government decides to run a bus line it is required to make the same business judgments that a private bus company must make. The government bus line is also subject to the same operational expenses as the privately owned bus line including the cost of providing security for the passengers. []

Earlier in this opinion [I found] that a special relationship existed between the parties based on the plaintiffs' dependence on RTD for their safe transportation. (*Ante,* pp. [799-800].) Contrary to the suggestion of our colleagues in *Hernandez* v. *Southern California Rapid Transit Dist., supra,* 142 Cal.App.3d at p. 1067, it is not correct that the finding of a special relationship allows liability to be imposed "irrespective of any grant of immunity set forth in Government Code section 845." [This court] has branded this theory a "fallacy." (*Williams* v. *State of California* (1983) 34 Cal.3d 18, 22 [192 Cal.Rptr. 233, 664 P.2d 137].) The correct reasoning, according to [this] court, is to consider the question of a special relationship in the context of the threshold question of duty, " 'beyond which remain the immunity barriers . . . .' " (*Id.,* at p. 23, citing *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 706 [141 Cal.Rptr. 189].)

On the other hand, although the existence of a "special relationship" does not obviate the need to consider whether respondents are immune from liability[] (*Williams, supra,* 34 Cal.3d at pp. 22-23) [,] it is highly relevant to the outcome of that consideration. Thus, in *Johnson* v. *County of Los*

*Angeles, supra,* 143 Cal.App.3d 298, [the Court of Appeal] found the special relationship between the county and the plaintiffs imposed a duty on the county which encompassed no "basic policy decisions" and, therefore, was not discretionary within the meaning of Government Code section 820.2. (143 Cal.App.3d at pp. 312-313.)

As the legislative history of section 845 makes clear, it is in essence a discretionary immunity statute. (4 Cal. Law Revision Com. Rep. (1963) pp. 827, 860.) This immunity governs the basic policy determinations regarding police protection service. (Van Alstyne, Cal. Government Tort Liability Practice, *supra,* at p. 659; Note, *Stone v. State of California: The King Can Do No Wrong* (1980) 8 Western St.U. L.Rev. 75, 84.) As such it should be given the same restricted scope as section 820.2; affording immunity only for " 'basic policy decisions.' " (*Johnson, supra,* 143 Cal.App.3d at p. 312; and see *Mann v. State of California, supra,* 70 Cal.App.3d at p. 778 holding section 845 inapplicable where a peace officer had undertaken to protect the plaintiff from physical harm.)

By voluntarily undertaking the business of a common carrier, the RTD assumed the common law duty to protect the plaintiffs from harm at the hands of their fellow passengers. Moreover, the RTD became subject to the specific mandatory duty imposed by California statute on every common carrier to use the utmost care and diligence for its passengers' safe carriage and "provide everything necessary for that purpose." (Civ. Code, § 2100.) As we have already noted, we do not construe section 2100 as imposing a mandatory duty to provide "police protection" or any particular type of protection on RTD buses. The RTD's duty is to provide the same degree of protection that a private bus company must provide under similar circumstances.

Thus, the basic policy decisions contemplated by section 845 have already been made for the RTD by common law precedent and statute. The decisions left to it are in the nature of operational/ministerial decisions, i.e., how to carry out that policy. These decisions are not immunized by Government Code section 845. In *Mann v. State of California, supra,* 70 Cal.App.3d at pages 778-779, a peace officer left the plaintiff in "a dangerous, unprotected position" with knowledge of a foreseeable risk of harm from third persons and resumed his routine patrol. The court found that the officer's action did not represent a carefully balanced policy decision but negligence in the performance of a ministerial task. Similarly, the plaintiffs in the case at bar allege that they were placed in a dangerous environment by defendant; that defendant knew of the danger to plaintiffs' and that defendant failed to use due care to protect plaintiffs.

## CONCLUSION

[I] reemphasize [I] do not [find] in this opinion that RTD is necessarily required to provide police protection in order to satisfy the duty of care imposed by Civil Code section 2100. As noted earlier, different and lesser measures often will suffice. Nor do [I find] the situation as alleged in the present complaint required RTD to have provided police protection to the passengers of this bus. That is a breach of duty question properly determined by the jury. Furthermore, [I] do not mean to imply by this [opinion] that Civil Code section 2100 overrides the Tort Claims Act in general or any statutory immunity other than Government Code section 845. [My] holding [would be] a limited one: that RTD is not immunized by section 845 if and when circumstances would require a private bus company to provide such protection to its passengers. []