Filed 6/30/23  Saenz v. City of San Bernardino CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| GARY SAENZ, Plaintiff and Appellant, v. CITY OF SAN BERNARDINO, Defendant and Respondent. | D080378 (Super. Ct. No. CIVDS2003802) |


APPEAL from a judgment of the Superior Court of San Bernardino County, Gilbert G. Ochoa, Judge.  Affirmed in part, reversed in part.

Wagner Zemming Christensen, Daniel Moussatche, and Dennis E. Wagner, for Plaintiff and Appellant.

Lynberg & Watkins, S. Frank Harrell, and Jonathan C. Bond, for Defendant and Respondent.


INTRODUCTION

Gary Saenz was elected San Bernardino city attorney in November 2015.  In November 2016, the city council changed its charter to, among other things, eliminate the position of city attorney.  The position's elimination was scheduled to become effective at the end of Saenz's term, March 5, 2020.

While in office, Saenz provided advice and counsel to city councilmembers, staff, and the mayor, John Valdivia, a former councilmember elected to the Office of Mayor in 2018. In August 2018, the city council engaged an outside law firm for municipal legal services and city attorney services.

Saenz and the mayor clashed, and Saenz repeatedly advised the council against following the mayor's requests. The mayor and his chief of staff told Saenz that Saenz should not criticize the mayor and that Saenz was overstepping his role as city attorney. Saenz ignored the mayor and his chief of staff. In June 2019, the mayor created an ad hoc economic development committee, and it recommended the city reduce the city attorney's salary beginning July 1, 2019. The council voted to reduce the salary. Saenz's anticipated salary reduction was reversed following the issuance of a writ of mandate.

In February 2020, Saenz filed suit against the City of San Bernardino (San Bernardino) and the mayor, alleging whistleblower retaliation in violation of Labor Code[1] section 1102.5, subdivision (b) (1102.5(b)) and seeking declaratory relief. The court granted San Bernardino's demurrer with leave to amend the first cause of action and without leave to amend the cause of action for declaratory relief. San Bernardino then demurred to Saenz's first amended complaint (FAC), and the court sustained it with leave to amend. In Saenz's second amended complaint (SAC), he added a cause of action for whistleblower retaliation under section 1102.5, subdivision (c). San Bernardino again demurred, and the court granted the demurrer without leave to amend.

On appeal, Saenz contends the court erred by improperly applying a heightened pleading standard to the SAC and by rejecting the addition of the

---

[1] Statutory references are to the Labor Code unless otherwise specified.

second cause of action.  We conclude the court identified the appropriate pleading standard, but in light of the Supreme Court's holding in *People ex rel. Garcia-Brower v. Kolla's, Inc.* (2023) 14 Cal.5th 719, 721 (*Kolla's*), the trial court erred in its application.  Thus, we reverse the judgment dismissing the first cause of action without leave to amend.  We also conclude the court did not abuse its discretion by rejecting the additional cause of action.  Accordingly, we affirm that portion of the judgment.

BACKGROUND AND PROCEDURAL FACTS

Saenz filed suit against San Bernardino and its mayor on February 4, 2020.  In his complaint, Saenz alleged causes of action against San Bernardino for retaliation for whistleblowing in violation of section 1102.5(b) and against the mayor and San Bernardino for declaratory relief.  San Bernardino and the mayor demurred, arguing the complaint failed to state a cause of action (Code Civ. Proc., § 430.10) and inadequately specified which causes of action were stated against which defendants (*id.*, subd. (f)).  The court sustained the demurrer as to the first cause of action, with leave to amend.  It also sustained the demurrer as to the second cause of action without leave to amend.

Saenz filed an FAC containing a single cause of action against San Bernardino:  retaliation for whistleblowing activities in violation of section 1102.5(b).  San Bernardino again demurred, arguing Saenz failed to allege sufficient facts to constitute a cause of action.  (Code Civ. Proc., § 430.10, subd. (e).)  San Bernardino also argued that the first cause of action was barred by legislative immunity.  The court sustained the demurrer with leave to amend.

Saenz then filed an SAC, the operative complaint.  It alleges two causes of action:  retaliation for whistleblowing activities in violation of

section 1102.5(b) and retaliation for whistleblowing activities in violation of section 1102.5, subdivision (c).[2]

In the SAC, Saenz alleges that he was elected in a recall election of the previous city attorney in November 2013 and returned to office by voters in November 2015. His four-year term was scheduled to continue through the first Monday of March 2020, in accordance with the city charter.

In November 2016, the city council changed its charter, and its newly adopted charter eliminated the position of city attorney, to become effective at the conclusion of the term of office. In 2018, city council member Valdivia was elected to the Office of Mayor.

In August 2018, San Bernardino contracted with an outside law firm for municipal legal services and city attorney services. The contract specified that Saenz would remain the elected city attorney until March 5, 2020, at which time an attorney from the outside law firm would serve as San Bernardino's city attorney.

While in office, Saenz counseled, advised, and warned elected officials and staff when they inadvertently or intentionally violated the city charter or the Ralph M. Brown Act (Brown Act), Government Code section 54950 et seq. He raised issues with "all members of the City Council" about the specificity of their meeting agendas' compliance with the Brown Act and told them they risked having their actions overturned for failure to comply with that law. Some employees ignored this advice, there were some "recalcitrant members of the City Council," and "the City Council beg[an] to undermine and usurp the authority of the City Attorney. . . ."

---

[2]     The SAC includes factual allegations regarding retaliation against the city clerk, including that the city clerk reported allegedly illegal activity by the mayor's staff to Saenz. We do not include details of these allegations because the appeal before us does not regard the city clerk.

4

Saenz told the city council at one of the first meetings after the mayor assumed office that increasing the mayor's staff size from three to nine employees could violate the city charter or a bankruptcy court order, and Saenz once criticized the mayor for attempting to call a special meeting to amend the municipal code. Saenz also told councilmembers from the fourth and seventh wards that the mayor was illegally attempting to remove the city manager so he could replace her with someone who was more subservient to the mayor.

In a private meeting, the mayor and his chief of staff told Saenz that they "would go to war" if Saenz continued to advise the city council against the mayor's requests. The chief of staff also told Saenz not to criticize the mayor during open session meetings. The mayor told the city attorney that Saenz was overstepping his role as city attorney. Saenz interpreted these comments to be instructions not to perform his duties, and he ignored them.

Saenz stated to the entire city council at a special meeting in March 2019 (the "Budget Study Workshop") that the meeting had not been properly agendized and violated the Brown Act, but the meeting was "conducted, nonetheless by the Mayor and City Council members." The mayor disagreed with Saenz and pulled aside Saenz to say that Saenz was "out of line." Saenz described the mayor and his chief of staff as "angry and hostile" to him.

The SAC also alleges that the mayor "frequently and continuously for months" harassed Saenz by saying Saenz was "out of line," and by demanding Saenz cease providing the city council advice contrary to the mayor's proposals. It further alleges that the mayor "allowed his staff" to harass Saenz, and that some employees and city councilmembers began a campaign to retaliate against him. Plus, "certain members" of the city council began to "undermine and usurp the authority" of the city attorney. The SAC alleges

5

that Saenz "spoke out about the illegal and unethical activities within the city government, including illegal treatment of employees, hostile work environment, violations of the city charter and the Brown Act."

In June 2019, after the mayor asked if Saenz would agree to reduce his salary, the mayor created an ad hoc economic development committee comprised of three councilmembers. At a council meeting, the committee recommended the city reduce the city attorney's salary beginning July 1, 2019. Saenz told the council the action was illegal, and the mayor's chief of staff, also an attorney, disagreed. The council voted to reduce the salary, effective July 1, 2019, from $184,000 to $100,000 annually. In July 2019, Saenz successfully petitioned for writ of mandate against San Bernardino contesting the expected pay reduction. San Bernardino accepted the judgment.

The SAC includes two causes of action: retaliation in response to whistleblowing, in violation of section 1102.5(b), and retaliation in response to the refusal to comply with illegal orders, in violation of section 1102.5, subdivision (c). The second cause of action was not in the original complaint or the FAC.

San Bernardino demurred to the SAC for failure to allege sufficient facts to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) It also argued both causes of action were barred by legislative immunity, and the second cause of action was barred because Saenz was not granted leave to amend by adding a new cause of action. After a hearing on the matter, the court granted the demurrer without leave to amend.

In its ruling, the superior court concluded that the SAC lacked the required particularity. It also explained that because Saenz reported the alleged illegal activity to the wrongdoer, it did not constitute an actionable

6

disclosure under section 1102.5(b). The court separately concluded the newly added second cause of action exceeded the scope of the leave it had granted.

The court entered judgment in San Bernardino's favor, and Saenz timely appealed. While the appeal was pending, the Supreme Court issued its opinion in *Kolla's*, and we invited the parties to submit supplemental briefs about the impact of that opinion, if any, on the judgment here.

DISCUSSION

A. Legal Principles

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) To establish adequate pleading, a plaintiff must show the facts pleaded are "sufficient to establish *every element of that cause of action*." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) In making our determination, we admit all facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We also read allegations "in the light most favorable to the plaintiff and liberally construed with a view to attaining substantial justice among the parties." (*Venice Town Council v. City of L.A.* (1996) 47 Cal.App.4th 1547, 1557.) We review the trial court's refusal to grant leave to amend the pleading under the abuse of discretion standard. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).)

Section 1102.5(b) prohibits an employer from retaliating against an employee for disclosing a violation of law to a government or law enforcement agency, or to a person with authority to investigate, discover, or correct the violation or noncompliance. (See also *Kolla's*, *supra*, 14 Cal.5th at

7

pp. 720, 723-724.)  To establish a prima facie claim for retaliation, an element of section 1102.5(b), a "plaintiff 'must show (1) [he or ]she engaged in a protected activity, (2) [his or] her employer subjected [the plaintiff] to an adverse employment action, and (3) there is a causal link between the two [actions].' [Citation]." (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468.)  A government employee's report of legal violation to his or her own public agency meets this requirement.  (See *Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 825-827.)

B. Statutory Liability Requires Pleading with Particularity

The parties disagree about whether the court properly applied the pleading standards.  Saenz argues he was required only to set forth the " 'essential facts of his case with reasonable precision and with particularity sufficiently specific to acquaint the defendant of the nature, source, and extent of his cause of action." (*Goldstein v. Healy* (1921) 187 Cal. 206, 210.) He maintains that *Lopez v. Southern California Rapid Transit District* (1985) 40 Cal.3d 780 (*Lopez*) "stands for the proposition that common law causes of action against a public entity are barred by the Government Tort Claims Act.[3]  A claim must be based on a statutory liability and *the existence of a statutory liability* must be ple[aded] with particularity," but when there is no "uncertainty of liability," there is no heightened pleading standard.  Thus, he contends the court incorrectly expected him to "provide the utmost detail to every facet of the cause of action" when it should have applied "[a] traditional liberal reading of the complaint" so that he could proceed with discovery to

---

3      Government Code section 815 provides that unless otherwise provided by statute, a public entity is not liable for an injury, regardless of whether it arises out of an act or omission of the public entity, a public employee, or another person, and liability is subject to statutory immunity of the public entity.

gather facts that San Bernardino possessed. San Bernardino argues that because it is a government entity being sued under the Tort Claims Act for statutory liability, all elements of the cause of action must be pleaded with particularity.

*Lopez* addressed a negligence cause of action in which the duty was defined by statute. (*Lopez, supra*, 40 Cal.3d at p. 795.) The primary issue was whether a government bus company owed a duty of care to protect passengers from violence by other passengers. The Supreme Court explained that the duty at issue was established by Civil Code section 2100, which requires a common carrier to "do all that human care, vigilance, and foresight reasonably [could] do under the circumstances." (*Lopez*, at p. 785.) The court recognized that negligence generally does not need to be pleaded with particularity, including the precise act or omission giving rise to the breach of duty, but "statutory causes of action must be pleaded with particularity." (*Id.* at p. 795.) Accordingly, the facts related to the statutory duty had to be pleaded under the heightened pleading standard. It explained: " '[T]o state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity.' [Citations.]" (*Ibid.*)

Although *Lopez* was focused on the elements of duty and breach, we do not understand the case to mean that the heightened pleading standard is limited to those elements, as Saenz appears to contend. For example, in *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339 (*State Dept.*), the Supreme Court discussed causation. There, the plaintiff sued for negligence and negligence per se following the parole of an inmate who raped and murdered the plaintiff's sister. The complaint alleged that the hospital had a mandatory duty under the Welfare and Institutions Code to employ

9

two evaluators to review the inmate's file before he could be considered for parole, but only one evaluator completed the review. (*Id.* at p. 346.) The defendants demurred, contending the plaintiff could not, as a matter of law, establish that the breach of duty was the proximate cause of the victim's death. (*Id.* at p. 347.) The Supreme Court agreed. (*Id.* at p. 357.)

Though the majority did not detail the pleading standard, in her concurring opinion, Justice Werdegar explained that because the causal connection was not plainly apparent and "because plaintiff's cause of action under Government Code section 815.6 is a statutory one requiring every material fact to be pleaded with particularity [Citations], plaintiff bore the burden of pleading with particularity each fact necessary to show how the agency's alleged breach caused her injury . . . . [T]o the extent the complaint included only conclusory or inferential claims of factual causation, rather than particularized allegations of fact, it was subject to demurrer." (*State Dept.*, *supra*, 61 Cal.4th at p. 358 (conc. opn. of Werdegar, J.).)

Further, to the extent Saenz contends that specificity is only required where there is uncertainty regarding one of the elements of the tort, we disagree. Saenz directs us to *Landau v. Salam* (1971) 4 Cal.3d 901 (*Landau*) to explain that specificity is required, at least in negligence causes of action, when there is "reasonable uncertainty." *Landau* was a personal injury suit in which the plaintiff alleged he was injured as the result of two separate incidents, one involving negligent driving of an automobile and the other involving negligent maintenance of property nearly four months later. (*Id.* at p. 903.) The Supreme Court explained that in that circumstance, a plaintiff could not simply allege he was uncertain about which event caused the injury; he must plead specific facts to justify joining the two defendants, including "the facts of the two accidents, the nature of the injuries, and the

10

interrelationship of the injuries." (*Id.* at p. 909.) That level of specificity would demonstrate that he was reasonably uncertain "as to the respective liabilities of the defendants." (*Ibid.*) Saenz argues that there is no uncertainty regarding any of the elements giving rise to liability here, so he does not need to plead with particularity. But *Landau* does not hold that specificity is *not* required in pleadings based on statutory liability against government entities. It simply explains that there are circumstances when more specific facts are required regardless of the defendant's status.

We recognize that facts demonstrating sufficient particularity may depend on the individual case. Even under a heightened pleading standard, plaintiffs are not expected to plead facts beyond the scope of their knowledge in the absence of discovery. For example, in *C.A. v. William S. Hart Union High School District* (2012) 53 Cal.4th 861 (*C.A.*), the Supreme Court considered whether vicarious liability for negligent hiring, retention, and supervision is a legally viable theory and concluded it is. (*Id.* at p. 865.) The plaintiff alleged that the school district failed to properly hire, train, and supervise a school counselor who engaged in sexual activities with the plaintiff, a minor student. (*Id.* at p. 872.) The plaintiff alleged that the district failed to provide reasonable supervision because the district had no system or procedure for investigating and supervising personnel to prevent sexual harassment and abuse. (*Ibid.*) The complaint did not identify by name the district employees responsible, and the court commented that it could not say from the face of the complaint that the district had no supervisory or administrative employees responsible for hiring, training, supervising, disciplining, or terminating a counselor. (*Ibid.*)

The Supreme Court explained that "*Lopez* does not stand for the proposition that a plaintiff must specifically plead, before undertaking

11

discovery, the *identity* of a government employee whose alleged negligence is made the basis for vicarious liability under section 815.2, and we doubt such an impracticable rule would be consistent with the legislative intent in enacting that statute." (*C.A.*, *supra*, 53 Cal.4th at p. 872; see also *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13.) The court quoted legislative commentary that explained that under Government Code section 815.2, it would " 'not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated.' " (*C.A.*, at p. 872.) Not only was the court's discussion specific to Government Code section 815.2, but it is not inconsistent with the rule that " 'every fact material to the existence of [a public entity's] statutory liability must be pleaded with particularity.' " (*Lopez*, *supra*, 40 Cal.3d 795.) It simply concluded that in that action the identity of the government employee was not material to demonstrating liability. In other words, where a plaintiff does not know the identity of a specific employee whose action or inaction is the basis of a vicarious liability claim, the plaintiff may not be required to name the employee.[4]

Other cases have similarly indicated that the specifics required to meet the pleading burden depend on the circumstances. In *Roger v. County of Riverside* (2020) 44 Cal.App.5th 510 (*Roger*), the plaintiff alleged a violation of Title 42 United States Code section 1983. The complaint "alleged that respondents had no procedure for accurately booking inmates who have committed civil contempt, that they knew they had no such procedure, and that these facts demonstrated" the training was inadequate enough to

---

[4]    The Supreme Court's reference to the commentary language that it would " 'not be necessary in every case' " also suggests there are instances in which that detail *is* necessary. (*C.A.,* at p. 872.)

12

implicate inmates' civil rights. (*Roger*, at p. 533.) The court explained that the plaintiff was required to plead facts with " ' " 'reasonable precision,' " ' " and it explained that the particularity required depended on the extent to which the defendant needed detailed information. (*Ibid*.) The complaint alleged there was no procedure for booking inmates who committed civil contempt, and the lack of that procedure caused false charges against those inmates. (*Ibid*.) "Those allegations were as specific as they could be at the pleading stage, without the benefit of discovery" because the plaintiff was "not privy to the details of respondents' booking procedures. . . ." (*Ibid*.) Thus, the court did not hold that there was no heightened pleading standard; it concluded the standard had been met. As our court has previously explained, "[t]he limited and statutory nature of governmental liability mandates that claims against public entities be specifically pleaded. [Citation.]" (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 439.)

Saenz's situation is not like the plaintiffs' situations in *C.A.* or *Roger*, where plaintiffs brought causes of action for negligence. In *C.A.* and *Roger*, the plaintiffs needed discovery to discover factual details to support their claims because their claims relied on policies and information outside the scope of their personal knowledge. (*C.A.*, *supra*, 53 Cal.4th at p. 872; *Roger*, *supra*, 44 Cal.App.5th at p. 533.) In contrast here, Saenz's whistleblower cause of action is not based on government inaction or the existence of a government policy about which he lacks personal knowledge. Saenz knows what illegal conduct he observed; he knows to whom he reported that conduct and when he reported it. He can identify what the specific adverse employment action was, and he has knowledge about the temporal relationship between the adverse action and his disclosure of illegal conduct.

13

Thus, Saenz could plead with particularity all the facts essential to the statutory cause of action.

In his appellate briefs, Saenz explains that he "ple[aded] a cause of action under Labor Code [section] 1102.5 and Labor Code [section] 1102.5 applies to public entities, therefore, public entities have statutory liability under Labor Code [section] 1102.5. This is sufficient to meet the pleading standards under *Lopez*." Saenz argued in the trial court that the facts as pleaded are sufficient to meet his burden, and he advances that argument on appeal as well.[5] Thus, we next consider whether the SAC complies with *Lopez*.

### C. The SAC Sufficiently Pleads Facts Essential to Statutory Liability with Particularity

When the trial court applied the heightened pleading requirements detailed in *Lopez*, it considered whether Saenz reported illegal activity to an employer who was not the suspected wrongdoer, the rule identified in *Mize-Kurzman v. Marin Community College District* (2012) 202 Cal.App.4th 832, 856-867 (disapproved of in *Kolla's*, *supra*, 14 Cal.5th at p. 734.) *Mize-Kurzman* reasoned that criticism delivered directly to a wrongdoer did not further the purpose of the whistleblower statute because it did not encourage disclosure to persons in positions to remedy the wrongdoing. (*Mize-Kurzman*, at p. 859.) *Kolla's* disapproves of *Mize-Kurzman* to the extent it excludes from protection disclosures to wrongdoers of their unlawful conduct. (*Kolla's*, at p. 734.)

---

5    Saenz indicates in a footnote that he could amend the first cause of action to plead he had a good faith belief that the city council could have restrained the mayor or that they were not involved in the illegal activities.

In *Kolla's*, the Supreme Court explained that the Legislature could have believed the wrongdoers themselves were well positioned to correct their own violations, and "that being confronted by an employee about violations could motivate an employer to correct those violations." (*Kolla's, supra*, 14 Cal.5th at p. 729.) It also concluded that "whether or not such confrontation leads to a remedy in a given case, providing employees with an internal disclosure option and protecting those employees who disclose wrongdoing directly to the wrongdoer further the purpose of whistleblower protection laws." (*Ibid.*) Thus, a whistleblower's disclosure directly to a wrongdoer is protected conduct under section 1102.5(b).

As San Bernardino points out, much of the SAC includes vague allegations that do not meet the specificity requirements of *Lopez*, and many allegations in the SAC emphasize the "internal personnel" battle going on between the mayor and Saenz. For instance, the SAC alleges that Saenz "spoke out about the illegal and unethical activities within the city government, including illegal treatment of employees, hostile work environment, violations of the city charter and the Brown Act." These allegations generally plead illegal conduct occurred, but they do not provide facts to show what the illegal activity was, who engaged in the activity, or to whom Saenz reported the conduct. Similarly, the SAC alleges that Saenz criticized the mayor for attempting to remove the city manager so he could replace her with someone who would be more subservient to the mayor, that he reported that conduct to the councilmembers for the fourth and seventh wards, and that he did so after the city manager was placed on a leave of absence. These allegations do not identify what law the mayor violated, or even if the mayor successfully engaged in the unlawful conduct, i.e., whether

15

the mayor removed the city manager. We note that unlike the plaintiffs in *C.A.* and *Roger*, this missing information is within Saenz's knowledge.

Yet, while the SAC is filled with vague allegations that do not meet the requirements of *Lopez*, it nonetheless includes at least one allegation that is sufficient—an allegation mentioned in the trial court's order granting the demurrer. The SAC alleges that Saenz stated to the entire city council at a special meeting in March 2019 (the "Budget Study Workshop") that the meeting had not been properly agendized and violated the Brown Act, but the meeting was "conducted, nonetheless by the Mayor and City Council members." This identifies the illegal conduct, when it occurred, and to whom it was reported.[6] Thus, although Saenz did not argue in his opening brief how the SAC meets the heightened pleading standard of *Lopez*, our review of the SAC demonstrates it does.

San Bernardino also argues the SAC fails to allege any adverse employment action, and it does not plead causation with sufficient specificity because it fails to identify dates to show temporal proximity between the protected act and the retaliatory conduct. We disagree.

The SAC alleges that prior to the June 2019 city council meeting, the mayor asked Saenz if he would be agreeable to reducing his salary, and Saenz said he would not. The mayor then created an ad hoc economic development committee comprised of three councilmembers, and the committee recommended reducing Saenz's salary effective July 1, 2019. The mayor and a majority of the city council agreed to adopt a budget that reduced Saenz's salary from $184,000 to $100,000. A reduction in salary is

---

[6] This allegation also provides a specific legal violation by identifying the conduct and the law at issue, and Saenz's disclosure of the unlawful activity at a public hearing suggests he believed there was a legal violation.

16

an actionable adverse employment action because it materially affects the terms, conditions, or privileges of employment. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1051.)

San Bernardino contends the proposed salary reduction was not an adverse employment action because Saenz successfully challenged its imposition via a writ of mandate filed July 2, 2019, the outcome of which the city accepted. We are not persuaded by San Bernardino's reasoning. Although the SAC references the salary reduction as "attempted," we read that in the context of the successful writ petition. The SAC alleges the salary reduction became effective July 1, 2019, and Saenz filed his writ of mandate the next day. Thus, the salary reduction occurred. The SAC also alleges noneconomic damages as a result of San Bernardino's conduct. We do not construe the court's interference via writ of mandate to be a "mere inconvenience[ ] or annoyance." Had San Bernardino not voted to reduce Saenz's salary, there would have been no need for Saenz to seek a writ of mandate to protect it.

San Bernardino next contends the SAC does not allege causation with sufficient specificity. Assuming specific dates are necessary to meet the pleading requirements, Saenz's complaint meets this requirement. The March 2019 special meeting "Budget Study Workshop" at which Saenz stated that the meeting violated the Brown Act and after which the mayor pulled Saenz aside to say he was "out of line," occurred about three months before the mayor asked Saenz to reduce his salary, then created an ad hoc economic development committee meeting. And it occurred less than four months before the city council voted to reduce Saenz's salary, effective July 1, 2019. Because there is a sufficiently specific allegation regarding section 1102.5(b), the court erred by entering a judgment of dismissal without leave to amend.

17

Finally, as it did in its demurrer, on appeal San Bernardino relies on case law that addresses the separation of powers doctrine to offer legislative immunity as an alternative basis for dismissal. "A . . . corollary of the separation of powers doctrine as it impacts legislatures is legislators have absolute immunity from damage suits based on legislative acts. [Citation.]" (*Steiner v. Superior Court* (1996) 50 Cal.App.4th 1771, 1784 (*Steiner*); Gov. Code, § 821 [public employee not liable for injury caused by adoption of enactment].) Thus, "legal action may not be taken against [legislators] for their activities involving planning or enacting legislation" because courts do not consider the impetus or motive behind the legislative action. (*Steiner*, at pp. 1783, 1785.)

San Bernardino contends the court cannot evaluate whether the city engaged in unlawful retaliation because the legislators' acts are absolutely immune. (See *Steiner*, *supra*, 50 Cal.App.4th at p. 1784 ["[L]egal action may not be taken against [legislators] for their activities involving planning or enacting legislation"]; Gov. Code, § 821 [public employee not liable for injury caused by adoption of enactment].) Further, San Bernardino reasons that because Government Code section 815.2 states "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability," that means that where the individual has immunity, there can be no entity liability either.

However, there are two sources of potential liability under the Tort Claims Act: "(1) the public entities' liability based on their own conduct and legal obligations, and (2) the public entities' liability, based on respondeat superior principles, for the misconduct of their employees that occurred in the scope of their employment." (*Zelig*, *supra*, 27 Cal.4th at p. 1127.) "[I]n a retaliation case, it is the *employer's adverse employment action* that

18

constitutes the substance of the tort. . . ." (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 901, fn. 8.)  Here, the complaint alleges the city council retaliated against Saenz by reducing his salary.  While the individual city councilmembers may have immunity, that immunity does not extend to San Bernardino because the cause of action is not based on respondeat superior.

## D. The Court Did Not Abuse Its Discretion by Rejecting New Cause of Action

When a court sustains a demurrer with leave to amend, the plaintiff may amend the complaint as authorized by the court's order.  (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785.)  To add a new cause of action, a plaintiff should obtain the court's permission.  (Code Civ. Proc., §§ 472, 473, subd. (a)(1); *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 613 [" '[B]y virtue of its inherent power to prevent abuse of its processes,' a trial court may strike an amended complaint 'filed in disregard of established procedural processes,' and may strike an amended pleading 'because no request for permission to amend was sought' "].)  Thus, when the sustention of the demurrer is with leave to amend, the leave to amend is generally not to add a new cause of action.  (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1015 (*Patrick*).)  However, that rule does not apply if the new cause of action responds to the court's reason for sustaining the demurrer.  (*Ibid.*)

For example, in *Patrick,* the court concluded the plaintiff failed to allege she had standing as a beneficial shareholder to bring a shareholder derivative claim.  (*Patrick, supra,* 167 Cal.App.4th at p. 1015.)  In response to the requirement that she demonstrate she was a beneficial shareholder with standing, she amended the complaint with a declaratory relief cause of

19

action, seeking a declaration that she had a community property interest in the shares, which would demonstrate standing. (*Ibid.*)

In *Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635 (*Rope*) (superseded by statute on other grounds), the plaintiff alleged, among other claims, wrongful employment termination in violation of public policy, associational discrimination, and failure to maintain a workplace environment free from discrimination.[7] (*Id.* at pp. 644, 654.) The court sustained with leave to amend those three causes of action. (*Id.* at p. 644.) The plaintiff amended them and added a new cause of action for discrimination based on actual or perceived disability. (*Id.* at p. 654.) On appeal, the defendant argued that the plaintiff failed to obtain leave to amend to add a new claim. The appellate court noted that it is error to sustain a demurrer if the plaintiff can state a cause of action under any possible legal theory and explained that the plaintiff "requested leave to amend the FAC to allege new disability discrimination and perceived disability claims," and the "issue was also discussed at the hearing on the demurrer." (*Ibid.*) It concluded the new causes of action responded to the court's concern that the plaintiff needed to provide "a statutory predic[ation]" for alleging the employer's failure to give the employee requested "leave was unlawful disability-based discrimination." (*Ibid.*)

Saenz contends that his addition of a cause of action for section 1102.5, subdivision (c) is his response to the court's conclusion that he had failed to "allege facts demonstrating what specific acts [Saenz was] aware of, when [Saenz] made such complaints and to whom, and facts demonstrating a

---

7 The plaintiff also alleged violation of section 1102.5. (*Rope*, at p. 648.) The appellate court concluded he could not plead a viable whistleblower claim because he did not claim to report suspicions of unlawful activity to a governmental agency or refuse to violate the law. (*Id.* at pp. 648-649.)

causal link between the protected activity and the adverse action[,]" the various elements of a cause of action under section 1102.5(b).  He notes that the court did not find that he failed to plead sufficient facts to sustain a cause of action under section 1102.5, subdivision (c), and because he "ple[aded] sufficient facts to sustain a cause of action[,] whether it was under Labor Code section 1102.5, subdivisions (b) or (c) is immaterial. . . ."  We disagree.

Saenz explains that the trial court concluded Saenz failed to "allege facts demonstrating what specific acts [Saenz was] aware of, when [Saenz] made such complaints, and to whom, and facts demonstrating a causal link between the protected activity and the adverse action."  He contends that adding a separate cause of action for violating section 1102.5, subdivision (c) is his response to the court's concern because he could "also seek relief under the same statute for retaliation for [his] refusal to carry out illegal orders without having to notify law enforcement or some other government agency."  In other words, he contends he does not need to plead facts that demonstrate illegal conduct, that he made complaints or to whom he made complaints— the problems the trial court indicated—because he can, instead, plead that he was asked to and refused to participate in an activity that would result in violating a law or regulation.  This does not correct the flaw with his cause of action for violating section 1102.5(b), as the court granted leave to do.  In essence, Saenz seeks to add a replacement cause of action based on newly added factual allegations about his refusal to engage in allegedly unlawful activity.  The SAC identifies an entirely separate basis for the adverse

employment action based on entirely different conduct.[8] Thus, the court did not abuse its discretion by refusing to consider the second cause of action when it granted demurrer and entered judgment dismissing the second cause of action without leave to amend.

## DISPOSITION

The judgment is reversed as to the first cause of action. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

[8] The addition of a cause of action for violating section 1102.5, subdivision (c) could require pleading with particularity even under the interpretation of *Lopez* offered by Saenz because it creates a "reasonable uncertainty" by identifying two separate courses of conduct that could have independently or together resulted in the adverse employment action. (See *Landau, supra*, 4 Cal.3d at p. 909.)